STATE of Minnesota, Respondent,

v.

Daniel James WINDISH, petitioner, Appellant.

No. C1–97–1134.

Supreme Court of Minnesota.

March 11, 1999.

John M. Stuart, Minnesota State Public Defender, Cathryn Middlebrook, Assistant State Public Defender, Minneapolis, for appellant.

M. Hatch, Minnesota Attorney General, Susan Gaertner, Ramsey County Attorney, Rosita Serrano, Assistant Ramsey County Attorney, St. Paul, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

Appellant, Daniel James Windish, was convicted by a Ramsey County jury of making terroristic threats in violation of Minn.Stat. § 609.713, subd. 1 (1998). Windish appealed his conviction solely on the grounds that his right to a speedy trial had been violated because his trial began one year and four days after his arrest. The court of appeals, despite labeling the delays "disturbing," affirmed Windish's conviction. *State v. Windish,* No. C1–97–1134, 1998 WL 188549, at *2, *4 (Minn.App. April 21, 1998). We reverse and hold under our supervisory powers that the delays encountered by Windish require vacation of his conviction in the interests of justice.

The facts underlying Windish's conviction are straightforward. On February 13, 1996, Windish, upset because he thought his neighbor, 69–year–old Rosemary Duffert, was responsible for having his cars towed, banged and kicked the door of Duffert's home in St. Paul. Duffert was at home taking care of her grandson when the incident occurred. According to Duffert's trial testimony, Duffert walked toward the porch door when Windish opened the door and screamed: "I'm gonna blow you away." Windish then stated that he was going to kill Duffert's dog. Windish kicked the dog, slammed a fence gate, and left.

On February 15, 1996, Windish was charged by complaint with making terroristic threats. Windish was arrested on March 7, 1996. On March 11, 1997, a jury convicted Windish of making terroristic threats, one year and four days after his arrest. Windish was sentenced to 41 months confinement to run concurrent with the 96–month sentence he was then serving for an earlier felony theft conviction.

Windish's claim that his right to a speedy trial was violated requires a close inspection of the defense requests, continuances, judicial reassignments, and prosecutor unavailability that contributed to the delays in this case. On April 19, 1996, Windish filed a demand for speedy trial on the terroristic threats charge. Windish's trial was scheduled to begin on May 16, 1996, but because he faced a longer sentence for the felony theft charge then pending against him, Windish's counsel requested that the theft charge be tried first. The trial court agreed and tried Windish first on the felony theft charge. A jury found Windish guilty of felony theft; because of his criminal history score of 13, he was sentenced to confinement for 96 months. Windish's conviction was affirmed on appeal. *State v. Windish,* No. CX–96–1946, 1997 WL 343126 (Minn.App. June 24, 1997).

The initial delays in trying Windish on the terroristic threats charge are attributable to Windish's request that the theft case be tried first and also to the unavailability of Windish's counsel during the summer of 1996. Windish's counsel asked for and was granted a continuance of trial until September of 1996. Trial was scheduled for September 25, 1996, and witnesses were subpoenaed, but on the day of trial the assigned judge was unavailable because of medical leave and the case was transferred to a new judge. The trial was rescheduled for November 13, 1996, and witnesses were subpoenaed. The record does not indicate the reason, but the case

was removed from the trial calendar on November 13, 1996, and transferred to still another judge.

A trial management conference was scheduled for November 14, 1996, but the prosecution was unable to attend so the conference was continued to the next day. The newly assigned judge met with the prosecution and defense on November 15, 1996. Windish's counsel made a motion to dismiss the case, or, in the alternative, to continue the charges for dismissal. The motion was denied, but the judge stated: "We will schedule this matter for trial on December 9, and this case is going to finish one way or the other before I leave." In response, the prosecutor noted a possible scheduling conflict for December 9, 1996. The judge then said:

> Well, then I would suggest, since this case has so much priority in your office, that you have somebody else try it. Even though Mr. Windish is in prison, he also has the right to have his case finished, and the Court does. This case has hung around long enough. I think we should make every effort to get it finished.

The prosecutor defended her office's actions by arguing that "[t]he state hasn't had anything to do with the fact that this case has been hanging around for a while." To which the judge replied:

> Well, I understand your position * * * but you've just made an impassioned appeal for justice, okay, and that you're willing to commit the powers of your office to this case. I'm saying, we have at least three, four weeks from now. This case is going to be tried. * * * I think that that's time enough for someone from your office to try the case. So I expect to resolve this matter on the 9th, one way or the other.

The exchange did not end there. The prosecutor added that she wanted the "record to be clear that the prosecutors in our office are not fungible." The judge ended the exchange by saying, "I think I've heard enough from you. I'll expect to see you or a member of your office here on the 9th of December, and that's it. Thank you."

On the scheduled trial date, December 9, 1996, the assigned prosecutor did not appear for trial. The record does not indicate that any effort was made by the prosecutor to obtain a substitute counsel to try the case. Rather, another attorney from her office appeared solely for the purpose of requesting a continuance, stating that the assigned prosecutor was in another trial. In response, Windish's counsel stated that the defense was prepared for trial, and that any continuance would likely result in the case again being transferred to a new judge, serving to further delay the case. Windish's counsel also stated that her office was having difficulty keeping track of witnesses and again moved that the charges be dismissed because Windish did not face any additional prison time if convicted. The judge denied Windish's motion on the record, and the case was continued to January 6, 1997, before one of the judges previously assigned to the case.

The prosecution and defense prepared for the January 6, 1997, trial date. However, Duffert, the victim, was unavailable to testify. Duffert was under defense subpoena for the January 6, 1997, trial date, but she informed the public defender's office that she was going to Arizona and would not be available to testify. The prosecutor's office confirmed that Duffert was not available, stating that Ms. Duffert's son called the prosecutor about one week before the trial date stating that his mother was in Arizona and would not be available for three months. Windish moved to dismiss the charge based upon a violation of his right to a speedy trial. The motion was denied, and the judge stated: "It's not going to be continued beyond this trial rotation." Nonetheless, because of congestion in the calendar and more pressing matters, the case was not called for trial during the January 6, 1997, trial term.

On February 20, 1997, the defense again scheduled a motion to dismiss the charge for lack of speedy trial. This time the case was transferred to the very first judge assigned to the matter. Windish's counsel filed affidavits in support of the motion, stating that defense witnesses were now unavailable or unable to be located. At the hearing, however, Windish's attorney stated that she thought the witnesses that were lost were now available. The judge noted concern about the case: "There is a problem with the

way it's floated around the system." Later in the hearing, the judge added: "But this case, it seems we have had more delays because of system problems that are not connected with either the defense or the prosecution, and that concerns me." After discussing possible trial dates, the judge observed: "There has to be a judge. One of the civil judges can take it, a probate judge can take it, a family court judge, anybody. We will find a judge to take it. The problem is when." The judge denied Windish's motion to dismiss and ordered that the trial be held within 30 days.

The trial was held March 11, 1997, before yet another judge. Neither the prosecutor nor the public defender who handled the case during the previous year tried the case. Windish's new counsel and the new prosecutor were assigned to the case only days before trial. The trial judge gave the newly assigned attorneys latitude with their written trial submissions because "the two of you having been handed off the file at the last minute." Windish now contends he proceeded to trial without key eyewitnesses, but no objection was made at trial by Windish's new counsel concerning the unavailability of witnesses. The state called just three witnesses (Duffert, Duffert's daughter, and one police officer) and completed the presentation of its case in less than a day. Windish's only witnesses were two police officers.

On appeal, the sole issue is whether the delays encountered by Windish violated his right to a speedy trial.

The right to a speedy trial is provided to an accused through the Sixth Amendment to the United States Constitution. This right applies in state criminal proceedings under the Fourteenth Amendment. Article 1, Section 6 of the Minnesota Constitution also provides the same guarantee.

▮ In Minnesota, the rule of criminal procedure that provides for a speedy trial states, in relevant part:

A defendant shall be tried as soon as possible after entry of a plea other than guilty.

On demand made in writing or orally on the record by the prosecuting attorney or the defendant, the trial shall be commenced within sixty (60) days from the date of the demand unless good cause is shown upon the prosecuting attorney's or the defendant's motion or upon the court's initiative why the defendant should not be brought to trial within that period. The time period shall not begin to run earlier than the date of the plea other than guilty.

Minn. R.Crim. P. 11.10.[1] The right to a speedy trial is as "fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

▮ In order to determine whether a delay in any given case constitutes a deprivation of the right to a speedy trial, courts are instructed to use the balancing test announced by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The test provides that a court must consider: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant. 407 U.S. at 530–33, 92 S.Ct. 2182; *see also State v. Widell*, 258 N.W.2d 795, 796 (Minn. 1977) (adopting four-part *Barker* inquiry for speedy trial demands). None of the factors is "either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 92 S.Ct. 2182. We now consider each of the factors.

A. Length of delay

▮ The length of the delay is a "triggering mechanism" which determines whether further review is necessary. *Id.* at 530, 92 S.Ct. 2182. Where the length of the delay is "presumptively prejudicial" there is a necessity for inquiry into the remaining factors of the test. *Id.* at 530–31, 92 S.Ct. 2182. In Minnesota, delays beyond 60 days from the

---

1. The United States Supreme Court declined to set a fixed time period for speedy trials. *See Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (writing that states are "free to prescribe a reasonable period consistent with constitutional standards").

date of demand raise a presumption that a violation has occurred. *See State v. Friberg,* 435 N.W.2d 509, 513 (Minn.1989). The state does not dispute that Windish's trial was delayed more than the 60 days from demand provided for in Minn. R.Crim. P. 11.10. Windish filed his original speedy trial demand on April 19, 1996, and his trial did not begin until 11 months later. This delay raises a presumption that a violation has occurred. *See Friberg,* 435 N.W.2d at 513. We next turn our attention to the remaining three *Barker* factors.

Reasons for the delay

The second *Barker* factor requires an inquiry into the reasons for the delay. 407 U.S. at 531, 92 S.Ct. 2182. The Supreme Court in *Barker* placed the burden on the state to ensure speedy trials. 407 U.S. at 529, 92 S.Ct. 2182. "[T]he rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial." *Id.*

The initial delay in this case can fairly be attributed to Windish. Windish filed his demand for a speedy trial on April 19, 1996, and his trial was scheduled for May 16, 1996. On request of his counsel, Windish's trial on the terroristic threats charge was delayed pending the outcome of his felony theft trial. Adding to the initial delay, Windish's defense counsel was unavailable during the summer of 1996, so the case was continued and trial was scheduled for September 25, 1996. Clearly, the delay attributable to Windish does not weigh in his favor. *See Barker,* 407 U.S. at 529, 92 S.Ct. 2182.

At this point in the proceedings, the reasons for the delays following the initial continuances can be attributed to the prosecution and the court system. Windish's trial was scheduled for September 25, 1996, but the judge assigned was unavailable because of medical leave. No record was made as to the details of the continuance. We do not place a great deal of weight on the delay caused by the judge's medical leave; however, we are mindful that the system is responsible for bringing cases to resolution in a speedy manner. *See id.*

██ During the next seven months, Windish's case was transferred from judge to judge, never staying with one judge for more than two months. The case was next scheduled for trial on November 13, 1996. The record does not reveal why the case was removed from the trial calendar, but does indicate that the reassignments appear to be administrative in nature in that the case was moved in response to a crowded court calendar. We have held that overcrowding in the court system is not a valid reason for denying a defendant a speedy trial. *See State v. Jones,* 392 N.W.2d 224, 235 (Minn.1986); *see also McIntosh v. Davis,* 441 N.W.2d 115, 119–20 (Minn.1989) (stating that good cause does not include calendar congestion unless exceptional circumstances exist). Here, the state has not shown any exceptional circumstances that prevented this case from being tried in a prompt manner.

At a November 15, 1996, trial management conference, Windish's counsel moved to have the charges dismissed in the interests of justice and pursuant to our decision in *State v. Krotzer,* 548 N.W.2d 252 (Minn.1996). The motion was denied and trial was set for December 9, 1996. On December 9, 1996, despite an earlier on-the-record admonition by the judge to appear for trial, the prosecutor did not appear and her colleague was not prepared to try the case. This is perhaps the most troubling stop in the series of delays that caused Windish's trial to take place more than a year after his arrest. The prosecution was told to appear ready for trial and failed to follow the judge's instruction. While the state argued that its prosecutors were not "fungible," the record shows that in the end the prosecutor assigned to this matter during the year of delays did not try the case and that the state presented only three witnesses. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. This was a serious charge, but the presentation of the case was hardly complex.

The United States Supreme Court has held that prosecutors are obligated to make a

good faith effort to bring a defendant to trial. *See Smith v. Hooey*, 393 U.S. 374, 382–83, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). While we are not prepared to label the actions of the state in this case bad faith, we are concerned that the prosecution failed to try the case when ordered. Under these circumstances, and given the state's substitution of prosecutors in the end, we conclude that the state did not have good cause to delay the case on December 9, 1996.

■ The last delay occurred on January 6, 1997, when both sides had subpoenaed witnesses and Windish stated his desire to proceed. However, the state's complaining witness, Duffert, was in Arizona and not available to testify. Normally, the unavailability of a witness constitutes good cause for delay. *See State v. Terry*, 295 N.W.2d 95, 96 (Minn.1980). However, a prosecutor must be diligent in attempting to make witnesses available and the unavailability must not prejudice the defendant. The state did not produce any evidence of its efforts to ensure Duffert's appearance. This lack of diligence weighs against the state.

Looking at the circumstances as a whole, the delays in bringing this case to trial can be attributed partly to the defense, partly to the court system, and partly to the prosecution. The Supreme Court assigned the burden of protecting speedy trial rights to the court system and prosecutors. *See Barker*, 407 U.S. at 529, 92 S.Ct. 2182. Thus, on review, we conclude that the court system and prosecution did not fulfill their obligations to bring Windish promptly to trial. Assertion of right to a speedy trial.

■ We next turn to Windish's assertion of his right to a speedy trial. Assertion of the right to a speedy trial need not be formal or technical, instead the Supreme Court has looked for any "action whatever * * * that could be construed as the assertion of the speedy trial right." *Barker*, 407 U.S. at 534, 92 S.Ct. 2182. We have said that an assertion of the speedy trial right is determined by the circumstances. *See Widell*, 258 N.W.2d at 796.

The court of appeals determined that Windish failed to renew his speedy trial demand until the January 6, 1997, hearing. *See Windish*, 1998 WL 188549, at *3–4. The court of appeals concluded that this assertion by Windish's counsel on January 6, 1997, while "sufficiently specific and forceful * * * failed to promptly revive appellant's initial demand, which had been made eight months earlier." *Id.* at *4 (citing *State v. Johnson*, 498 N.W.2d 10, 16 (Minn.1993) (stating that "prompt and forceful" speedy trial assertions "are key to a court's evaluation of a speedy trial claim"). The court of appeals also stated that Windish's counsel failed to assert the right to a speedy trial when Windish's counsel told the court on December 9, 1996, that Windish wanted to proceed and that it was becoming difficult to keep track of defense witnesses. *Id.* at *3. The court of appeals noted: "[I]t is a simple matter for a defendant to make a specific demand for a speedy trial on the record." *Id.* at *3 (quoting *State v. Rachie*, 427 N.W.2d 253, 257 (Minn.App. 1988), *pet. for rev. denied* (Minn., Sept. 20, 1988)).

Rather than relying on notions of "temporary waiver"[2] as set forth in *Johnson*, we think the better approach is to analyze the case by applying the *Barker* factors. *Johnson*, it should be noted, involved a 629–day delay between arrest and trial, only 16 days of which could be directly attributed to the state. 498 N.W.2d at 16. Perhaps most significantly, and in stark contrast to the record before us today, *Johnson* involved

---

**2.** The Supreme Court considered and rejected an approach to speedy trial demands based on waiver. Wrote the Court: "Such an approach, by presuming waiver of a fundamental right from inaction, is inconsistent with this Court's pronouncements on waiver of constitutional rights." *Barker*, 407 U.S. at 525, 92 S.Ct. 2182 (footnote omitted). The Court also stated that to incorporate waiver into the the context of speedy trial demands would require on-the-record intentional relinquishment of the right. *Id.* at 526, 92 S.Ct. 2182. Finally, the Court added: "We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* at 528, 92 S.Ct. 2182.

tactical decisions by the defense to delay the trial. *Id.* These defense decisions to delay were interspersed by speedy trial assertions. *Id.* Despite the unique facts underlying the *Johnson* decision, we find the approach taken by the Supreme Court in *Barker* compelling. That a defendant sought a continuance can be weighed under the second prong of the test that looks at the reasons for the delay. The circumstances surrounding the frequency and intensity of a defendant's assertion of a speedy trial demand—including the import of defense decisions to seek delays—can be weighed in the third prong of the *Barker* test, which measures the defendant's assertion of the speedy trial right. Additionally, we are concerned that the *Rachie* decision overreaches *Barker* when it states that making a formal request for a speedy trial is a "simple matter." 427 N.W.2d at 257. In contrast, *Barker* instructs us to look for any "action whatever" to determine if a defendant has made a speedy trial demand. We are mindful that a constitutional right and the protections that such rights are accorded are at stake. *Barker* not only placed the burden on the court system and prosecutors to bring cases to trial, it expressly stated that "[a] defendant has no duty to bring himself to trial." 407 U.S. at 527, 92 S.Ct. 2182.

We now turn our attention to the record as it applies to Windish's demands for a speedy trial. It is not disputed that Windish formally filed a demand for speedy trial on April 19, 1996. Windish then sought, and was granted, a continuance so that his theft case could be tried first. In the months following the September 25, 1996, trial date, Windish made a series of motions to dismiss the case.[3] The court of appeals concluded that the defense did not renew its speedy trial demand until January 6, 1997. Our review indicates that the January 6 hearing was the first time Windish *expressly* renewed his speedy trial demand. However, the record indicates that Windish's speedy trial rights were at issue as

early as November 15, 1996. At the November 15 hearing, the judge stated: "Even though Mr. Windish is in prison, he has the right to have his case finished, and the court does. This case has hung around long enough." Keeping in mind that *Barker* tells us to look for any "action whatever" as an assertion of a defendant's speedy trial right, the circumstances of the November 15 hearing make it clear that Windish's speedy trial rights were at issue. Windish was tried 116 days after this hearing date, nearly double the time allowed by Rule 11.10 of the Minnesota Rules of Criminal Procedure. This factor weighs slightly in favor of Windish's assertion that he was denied his right to a speedy trial.

Prejudice to Windish

The final prong of the *Barker* test is to determine whether Windish suffered prejudice as a result of the delays. 407 U.S. at 532, 92 S.Ct. 2182. The Supreme Court has identified three interests that are protected by the right to a speedy trial: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired. *See id.* A defendant does not have to affirmatively prove prejudice; rather, prejudice may be suggested by likely harm to a defendant's case. *See Moore v. Arizona,* 414 U.S. 25, 26–27, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). The Supreme Court has said that the third factor, impairment of a defendant's defense, is the most serious. *See Doggett v. United States,* 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citing *Barker,* 407 U.S. at 532, 92 S.Ct. 2182).

The first two concerns regarding prejudice do not apply under the unique facts of this case as Windish was already in custody for another offense. Windish's conviction on the terroristic threats charge could not result in any additional time in prison.[4] The third

---

3. Beginning with the November 15, 1996, trial management conference, Windish sought to have the charge against him dismissed in the interests of justice. Windish's counsel relied on our decision in *State v. Krotzer,* 548 N.W.2d 252 (Minn. 1996) (recognizing that trial court's decision to stay adjudication was within the court's "inherent judicial power"). Here, however, Windish

was asking not for a stay of adjudication but a dismissal of the charges.

4. Consecutive sentences are not permitted under the sentencing guidelines for a situation such as Windish's where a defendant is serving a sentence for felony theft followed by a conviction

factor, impairment of Windish's ability to defend himself, is implicated. Windish contends that he lost contact with key witnesses which hampered his defense and ultimately prejudiced him. Windish's counsel expressed concern about losing witnesses at the December 9, 1996, January 6, 1997, and February 20, 1997, hearings. Windish's counsel, in an affidavit, stated that these witnesses overheard the confrontation between Windish and Duffert and that Duffert often instigated confrontations with Windish. While moving for dismissal of the case at the hearing on February 20, 1997, Windish's counsel stated that she thought the lost witnesses were again available. The state argues that Windish's new defense lawyer did not claim any difficulty in locating witnesses at trial.

While we agree with the state that Windish has not provided a clear record of how the witnesses would have testified, we conclude that the circumstances surrounding the delay, including the availability of witnesses at the earlier trial dates, suggest harm to Windish's case. We also realize that Windish faces a difficult challenge in demonstrating prejudice. The Supreme Court has stated the erosion of testimony over time "can rarely be shown," and that impairment of one's defense is the most difficult kind of speedy trial prejudice to prove. *Barker,* 407 U.S. at 532, 92 S.Ct. 2182.

 Having applied the *Barker* factors, we are unable to conclude on this record that the delay complained of was a violation of Windish's constitutional right to a speedy trial. Nonetheless, we are troubled by the unavoidable conclusion that justice was not served by the numerous continuances, judicial reassignments, and unavailability of the prosecutor. On several occasions, trial judges expressed resolve to bring this case to trial, but at no point did the system adequately address the problem. Instead, the

case floated through a system we acknowledge is crowded with pressing matters. But ultimately the criminal justice system, including judges, prosecutors and defense lawyers, is responsible for the fair administration of justice. And while the wrongs in this case do not reach the level of a constitutional violation, we are convinced that the system did not serve the interests of justice. That said, we invoke our supervisory power to insure the fair administration of justice and in so doing reverse Windish's conviction for making terroristic threats. In the past, we have used our supervisory power when, like here, the number of procedural irregularities present required such action. *See Shorter v. State,* 511 N.W.2d 743, 747 (Minn.1994).[5] It is our duty to supervise the criminal justice system and ensure the fair administration of justice. *See State v. Caldwell,* 322 N.W.2d 574, 586 n. 9 (Minn.1982) (citations omitted). Because the interests of justice were not served by the criminal justice system, we reverse the court of appeals and vacate Windish's conviction.

Reversed.

---

and sentence for making terroristic threats. *See* Minnesota Sentencing Guidelines II.F.

**5.** We also note that the right to a speedy trial is codified in our rules of criminal procedure. *See* Minn. R.Crim. P. 11.10. Determination of procedural matters is a function of the judiciary. *See State v. Johnson,* 514 N.W.2d 551, 554 (Minn. 1994). The authority to regulate procedural matters arises from our inherent judicial powers,

*see State v. Willis,* 332 N.W.2d 180, 184 (Minn. 1983), which has been acknowledged by the legislature. *See* Minn.Stat. § 480.059, subd. 1 (1998) (stating that "[t]he supreme court shall have the power to regulate the pleadings, practice, procedure, and the forms thereof in criminal actions in all courts of this state, by rules promulgated by it from time to time").