*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0635**

State of Minnesota,
Respondent,

vs.

Trevon Fuller,
Appellant.

**Filed April 18, 2016
Reversed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-13-34085

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his convictions of felony first-degree driving while impaired and gross misdemeanor driving after cancellation, arguing that his right to a speedy trial was violated. We reverse.

## FACTS

On July 30, 2013, while driving with three children in his car, appellant Trevon Fuller crashed the car into a concrete guard rail. A warranted draw of Fuller's blood after the crash revealed an alcohol concentration of 0.20. On October 7, respondent State of Minnesota charged Fuller with two counts of felony first-degree driving while impaired (DWI) and one count of gross-misdemeanor driving after cancellation (DAC). On November 7, at Fuller's first appearance, the district court appointed a public defender. On December 4, Fuller pleaded not guilty. The court ordered Fuller's release from custody conditioned on, among other things, his release after sentencing in an unrelated case. But Fuller was sentenced to prison in the unrelated case and was incarcerated throughout the remainder of proceedings in this case.

In this case, the district court set trial for March 10, 2014. At Fuller's request, the court continued the trial to May 12 and later to August 25. The court later reset the August 25 trial date to July 28. Why and exactly when the court reset the August 25 trial date to July 28 is not clear in the record. On May 23, Fuller filed a petition to proceed pro se and a "pro se" demand for a speedy trial. In June, the state requested a trial continuance due to a newly assigned prosecutor's two-week military leave. Although the prosecutor

noted that he was available for trial on August 11 or August 25, the court continued the trial to November 3. Why the court selected a new trial date of November 3 is not clear in the record.

Between August and October 2014, Fuller filed several pro se motions, including an October 2 motion to dismiss for violation of his speedy-trial right. At an omnibus hearing on October 16, Fuller complained to the district court that it had not addressed his pro se motions. The court responded, "I can't address the motions you're filing on your own behalf if you're represented by a lawyer. . . . So that's why I have to figure out th[e petition to proceed pro se] first." Fuller stated, "I filed a motion to . . . represent myself in May and . . . this is just now being addressed here." And the court responded, "Well, part of that is because you have a DOC hold. And when that happens, they don't feel any rush to get you back here to deal with your other cases."

The transcript of the October 16, 2014 hearing reflects that, at the time of that hearing, the trial date of November 3 had been changed to January 5, 2015. Why that change occurred is not clear in the record. Before the conclusion of the October 16 hearing, Fuller waived his right to counsel, and the district court discharged his public defender. The court noted its receipt of Fuller's demand for speedy trial but did not address his speedy-trial dismissal motion. On October 22, 2014, Fuller filed another pro se demand for a speedy trial, and he filed additional pro se motions between November and December. At a hearing on December 29, Fuller stated that he had "filed for a speedy trial and I never got addressed by the Court or the State in regards to that." The court responded, "Well,

3

here's the issue. You were in custody because of the Department of Corrections, not because of this case."

Fuller's trial commenced on January 5, 2015. A jury found Fuller guilty as charged. The district court sentenced Fuller to an upward durational departure of 75 months' imprisonment for felony first-degree DWI and 365 days in the workhouse for gross-misdemeanor DAC.

This appeal follows.

**DECISION**

"Criminal defendants have the right to a speedy trial under the constitutions of both the United States and Minnesota." *State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015) (citing U.S. Const. amend. VI; Minn. Const. art. I, § 6). "Claimed Sixth Amendment violations are subject to de novo review." *Id.* In considering a speedy-trial challenge, "[appellate courts] must consider: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant." *Id.* (quotation omitted). "None of these factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* (quotation omitted).

*Length of delay*

As to the first factor, "[t]he delay in speedy-trial cases is calculated from the point at which the sixth amendment right attaches: when a formal indictment or information is issued against a person or when a person is arrested and held to answer a criminal charge."

4

*State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986). "A delay that exceeds 60 days from the date of [a speedy-trial] demand [made after entry of a plea other than guilty] raises a presumption that a violation has occurred, and [appellate courts] must apply the remaining factors of the test." *Taylor*, 869 N.W.2d at 19; *see* Minn. R. Crim. P. 11.09(b) (providing that 60-day period "begins on the date of the plea other than guilty"). Even so, "the length of the delay only serves as a starting point for a speedy trial analysis." *State v. Johnson*, 498 N.W.2d 10, 15 (Minn. 1993).

Here, the state charged Fuller on October 7, 2013; Fuller pleaded not guilty on December 4; Fuller filed a "pro se" demand for a speedy trial on May 23, 2014, while represented by the public defender; and Fuller's trial commenced on January 5, 2015. The delay between the charging date and the date that Fuller's trial commenced is 455 days. The delay between Fuller's attempted "pro se" speedy-trial demand and trial commencement is 227 days. And the trial delay after Fuller's pro se demand for speedy trial on October 22, 2014, following discharge of his public defender on October 16, is 75 days. Regardless of which starting date we consider, the trial delay presumptively violated Fuller's right to a speedy trial, and we therefore apply the remaining factors of the test.

*Reason for delay*

As to the reason for the delay, "the key question is whether the government or the criminal defendant is more to blame for the delay." *Taylor*, 869 N.W.2d at 19 (quotation omitted). "Delays caused by defense motions generally weigh against the defendant." *State v. Hahn*, 799 N.W.2d 25, 32 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011); *see also State v. DeRosier*, 695 N.W.2d 97, 109 (Minn. 2005) (stating that "[w]hen the overall

delay in bringing a case to trial is the result of the defendant's actions, there is no speedy trial violation," and determining that "delay in bringing the matter to trial was occasioned by defense motions for a change of venue, continuances, and a Rule 20 evaluation"); *Johnson*, 498 N.W.2d at 16 (attributing bulk of trial delay to defendant whose "own motions were the primary reason for much of the delay"). Even as to delay that weighs against the state, "different weights should be assigned to different reasons." *Taylor*, 869 N.W.2d at 20 (quotation omitted). "For instance, a deliberate delay to hamper the defense weighs heavily against the prosecution, while neutral reasons such as negligence or overcrowded courts weigh less heavily." *Id.* (quotations omitted).

On January 5, 2015, prior to the commencement of Fuller's trial, the district court and Fuller engaged in the following discussion regarding Fuller's speedy-trial demand:

> THE COURT: [Y]our confinement, as I explained to you before, the fact that you're in the custody of the Department of Corrections, that's why your trial was delayed, not because of this court or [the prosecutor] or anybody here.
> THE DEFENDANT: Okay. Well, . . . it goes against the rules of the court because me being in the DOC shouldn't have no reason for the State or this court to postpone any court dates. You guys can writ me here anytime you feel.
> THE COURT: Well, it's on you to file a detainer. If you want a trial, it's your obligation to file a detainer and get yourself here for trial.

The prosecutor made no attempt to correct the court. Fuller argues that his service of another sentence was not a valid reason to delay his trial and that he had no duty to bring himself to trial. We agree.

The parties agree that the district court's use of "detainer" is a reference to a request for final disposition under the Uniform Mandatory Disposition of Detainers Act

(UMDDA), Minn. Stat. § 629.292 (2014). The UMDDA permits a prisoner to "request final disposition of any untried indictment or complaint pending against the person in this state." Minn. Stat. § 629.292, subd. 1(a). But under the Interstate Agreement on Detainers (IAD), Minn. Stat. § 629.294 (2014), a "detainer" is filed against a prisoner by "[t]he appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending." Minn. Stat. § 629.294, subd. 1, art. IV(a); *see State ex rel. Garner v. Gray*, 208 N.W.2d 161, 165–66 (Wis. 1973) ("Other sections of the [Uniform Detainer] Act make it clear that the prosecuting officer of the county wherein outstanding complaints, warrants or indictments exist is the 'appropriate officer' within the meaning of art. IV(a). This is also verified by the Committee of State Officials on Suggested State Legislation, wherein it is stated: 'In Article IV the prosecutor initiates the proceeding.'" (footnote omitted)); *see also State v. Wilson (In re State)*, 632 N.W.2d 225, 230 (Minn. 2001) (stating, when interpreting the UMDDA, that "[appellate courts] look to other states with laws similar to those of Minnesota to provide guidance" and "also look for guidance from the UMDDA's counterpart, the Interstate Agreement on Detainers").

"[A] defendant has no duty to bring himself to trial," and courts and prosecutors bear the primary burden of assuring that cases are brought to trial. *State v. Windish*, 590 N.W.2d 311, 316, 318 (Minn. 1999) (quotation omitted). The supreme court has stated that "the right to a speedy trial is not suspended by confinement as punishment for a different offense." *State v. Borough*, 287 Minn. 482, 483, 178 N.W.2d 897, 898 (1970); *see also State v. Hamilton*, 268 N.W.2d 56, 60 (Minn. 1978) ("The right to a speedy trial is guaranteed by both the Federal and state constitutions and is not suspended by

7

imprisonment on other charges." (footnote omitted)). The district court therefore incorrectly informed Fuller that he was obligated to file a detainer and get himself to court for trial.

Fuller's initial trial date was March 10, 2014. Due to Fuller's request for a continuance, the trial was continued to May 12 and then August 25. As above noted, the district court reset the date to July 28 for reasons not contained in the record. The delay from March 10 to July 28 weighs against Fuller's claimed speedy-trial violation.[1]

The state requested a further continuance of trial due to the prosecutor's two-week military leave. Although the state informed the district court of the prosecutor's availability on August 11 or August 25, 2014, the court continued the trial to November 3, 2014, for reasons not contained in the record. Nor does the record contain any reason for the court's change of the trial date from November 3 to January 5, 2015. The state contends that any delay after November 3 reflects the court's attempt to accommodate Fuller as a result of Fuller's "mixed messages, *i.e.*, his numerous, time-demanding *pro se* motions, along with his lack of legal understanding, along with his speedy-trial demand." This is sheer speculation by the state. We conclude that the trial delay from August 25, 2014, at the latest, to January 5, 2015, weighs against the state. Although a continuance was justified due to the prosecutor's military leave, the unexplained delay from August 25, 2014, to January 5, 2015, must weigh against the state because courts and prosecutors bear the primary burden of assuring that cases are brought to trial. *Windish*, 590 N.W.2d at 316.

---

[1] Neither party addresses the reason for the delay between October 7, 2013 and March 10, 2014, the initial trial setting.

The record does not reflect that the delay between August 25, 2014, and January 5, 2015, was the result of the prosecutor's deliberate delay to hamper the defense. The delay therefore weighs less heavily against the state than would a deliberate delay. *See Taylor*, 869 N.W.2d at 20 (stating that "a deliberate delay to hamper the defense weighs heavily against the prosecution, while neutral reasons such as negligence or overcrowded courts weigh less heavily" (quotations omitted)).

*Assertion of right*

A "defendant's assertion of the right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *State v. Friberg*, 435 N.W.2d 509, 515 (Minn. 1989) (quotation omitted). "The circumstances surrounding the frequency and intensity of a defendant's assertion of a speedy trial demand—including the import of defense decisions to seek delays—can be weighed in the third [factor] . . . ." *Windish*, 590 N.W.2d at 318. Here, Fuller filed demands for speedy trial on May 23 and October 22, 2014, and he moved to dismiss the case due to a speedy-trial violation on October 2, 2014. The state concedes that Fuller asserted his right to a speedy trial. This factor therefore weighs in Fuller's favor.

*Prejudice to defendant*

"[The supreme court] ha[s] identified three interests to consider in determining whether a defendant suffered prejudice: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired." *Taylor*, 869 N.W.2d at 20 (quotation omitted). "A defendant does not have to affirmatively prove prejudice; rather, prejudice may be

suggested by likely harm to a defendant's case." *Windish*, 590 N.W.2d at 318. Delay-occasioned harm to a defendant's case may include damage to a witness's ability to recall "essential facts," the unavailability of a witness, or impairment of the defendant's right to fair representation. *Jones*, 392 N.W.2d at 235–36.

Fuller argues that his "repeated requests for prompt disposition of the criminal charges demonstrates his 'anxiety and concern' over the prospect that he might be convicted." But the supreme court has stated that "[i]f a defendant is already in custody for another offense . . . the first two interests [of preventing oppressive pretrial incarceration and minimizing the anxiety and concern of the accused] are not implicated. The only remaining question is whether the defense was likely harmed by the delay." *Taylor*, 869 N.W.2d at 20 (citation omitted).

Fuller argues that he suffered prejudice as a result of the delay because the charges in this case prevented him from being eligible for work release from prison on his unrelated sentence. The United States Supreme Court has cautioned that "no court should overlook the possible impact pending charges might have on [an incarcerated defendant's] prospects for parole and meaningful rehabilitation." *Moore v. Arizona*, 414 U.S. 25, 27, 94 S. Ct. 188, 190 (1973); *see also State v. Miller*, 525 N.W.2d 576, 583 (Minn. App. 1994) (concluding that defendant was prejudiced by delay where, among other things, "[h]e was unable to participate in prison work programs and other rehabilitation"). We note that Fuller did not inform the district court that he was eligible for work release on his unrelated sentence until a hearing on December 30, 2014, but "[a] defendant does not have to affirmatively prove prejudice." *Windish*, 590 N.W.2d at 318; *see also State v. Griffin*, 760

10

N.W.2d 336, 341 (Minn. App. 2009) ("[A] defendant does not have to prove specific prejudice."). "None of the[] [four] factors is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Taylor*, 869 N.W.2d at 19 (quotation omitted).

We conclude that the delay in this case, much of which is unexplained in the record, violated Fuller's right to a speedy trial. The only remedy for a speedy-trial violation is to reverse and vacate a defendant's convictions. *See Griffin*, 760 N.W.2d at 341 (stating that "because there can be no other effective remedy for [a speedy-trial] violation . . . , [the defendant]'s convictions must be reversed and vacated"). We therefore reverse and vacate Fuller's convictions.

**Reversed.**