*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0640**

State of Minnesota,
Respondent,

vs.

Jeremy Williams,
Appellant.

**Filed May 2, 2016
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-14-18732

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Klaphake,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**ROSS**, Judge

Jeremy Williams shot a man in the buttock with a revolver. A jury found Williams guilty of second-degree assault with a dangerous weapon causing substantial bodily harm, second-degree assault with a dangerous weapon, and possession of a firearm by an ineligible person. Williams appeals from his convictions, arguing that the district court violated his right to a speedy trial and that the prosecutor introduced insufficient evidence to prove that the gunshot injury constitutes "substantial bodily harm." We reject Williams's speedy-trial argument because the 133-day delay in getting Williams to trial was mostly attributable to Williams and the delay did not prejudice his defense. We reject Williams's insufficient-evidence argument because the jury could reasonably find that a gunshot victim who continues to carry a .38-caliber slug lodged in his buttock has suffered "substantial bodily harm." We therefore affirm.

## FACTS

Williams shot C.E. on a Saturday evening in June 2014 shortly after the two had been fighting. C.E. showed up on E.F.'s front porch in Minneapolis and boasted that he had just "knocked out" Williams and his brother in a fight at a nearby restaurant. Williams walked up and interrupted C.E.'s crowing. C.E. told Williams that he "better not throw a firecracker this way," which was C.E.'s way of warning that Williams had better not shoot him. Williams did not heed the warning. He pulled out a .38-caliber Smith & Wesson revolver and fired five shots. E.F. and C.E. tried to run. Williams fled.

C.E. told E.F. that he had been shot, and E.F. saw that C.E. was bleeding. E.F. dialed 9-1-1 and covered C.E. with a blanket. Paramedics arrived and took C.E. to the hospital by ambulance. Doctors treated him for the gunshot wound but left the bullet lodged in his buttock.

Williams meanwhile fled down an alley where he tossed the gun behind mattresses and entered a church building. There he encountered a group and announced that he had just shot someone. A man left the group, found a police officer, and directed the officer to Williams. Police arrested Williams outside the church.

The state charged Williams with second-degree assault with a dangerous weapon causing substantial bodily harm, second-degree assault with a dangerous weapon, and possession of a firearm by an ineligible person. Williams asserted his right to a speedy trial on July 29, 2014, and the trial started 133 days later on December 9. The bullet remained lodged in C.E.'s buttock at the time of trial. The jury heard this account of the incident. It also learned that police found the revolver in the alley and that it had been fired five times. Jurors learned that the gun contained an insufficient amount of genetic material for technicians to construct a DNA profile of its handler. DNA testing of clothes that police found inside the church bathroom indicated that they were not Williams's.

The jury found Williams guilty of all three crimes. This appeal follows.

### DECISION

Williams's appeal raises two issues. We first decide whether the district court violated his constitutional right to a speedy trial. And we decide whether sufficient

3

evidence supports the conviction of second-degree assault with a dangerous weapon causing substantial bodily harm.

## I

Williams argues that we must reverse his convictions because the 133-day delay between his speedy-trial demand and his trial violated his right to a speedy trial. We review de novo whether a trial delay has violated the defendant's constitutional right. *State v. Griffin*, 760 N.W.2d 336, 339 (Minn. App. 2009). The federal and state constitutions guarantee a defendant the right to a speedy criminal trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6. A defendant must be tried as soon as possible after he pleads not guilty, and if he demands a speedy trial, by rule the trial must start within 60 days unless good cause justifies a delay. Minn. R. Crim. P. 11.09(b). But whether a delay violates his constitutional right to a speedy trial depends on the four-factor test announced by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972). *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999). We consider (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his speedy-trial right; and (4) whether the delay prejudiced the defendant's case. *Id.*

**Length of Delay**

We presume that a defendant's case is prejudiced from a delay lasting longer than 60 days after the defendant demanded a speedy trial. *Id.* at 315–16. We therefore presume that the delay here, which was 133 days, prejudiced Williams's defense. We turn to the other *Barker* factors.

4

**Reason for Delay**

*Barker* informs us that the reason for the delay weighs on the speedy-trial analysis. 407 U.S. at 531, 92 S. Ct. at 2192. A deliberate delay to hinder the defense would weigh heavily against the state. *Id.* A more neutral reason, like prosecutorial negligence or an overcrowded court docket, should also weigh against the state, but less heavily so. *Id.* A prosecutor's valid reason, like the absence of a witness, may justify a delay so as not to weigh against the state at all. *Id.* But defense-caused delays weigh against the defendant. *Vermont v. Brillon*, 556 U.S. 81, 90, 129 S. Ct. 1283, 1290 (2009). And when the defendant's actions are, overall, the cause of the delay, his speedy-trial right has not been violated. *State v. DeRosier*, 695 N.W.2d 97, 109 (Minn. 2005).

Various circumstances caused the delay here, but overall, it can be attributed mostly to Williams, not to the state.

When Williams made his initial speedy-trial demand on July 29, his attorney stated, "[B]etween the [j]udge's schedule, the prosecution's schedule, and my schedule, October 27 [is] the first available date that we could select for your trial." The attorney asked Williams if he would waive his right to a trial within the 60-day period, but Williams refused. The district court summarized the scheduling conundrum: "I can give you a date before that, but [the trial] won't happen." The court set a trial date for September 22 but warned Williams that at least 15 trials were scheduled ahead of his and that his "most likely [would] not proceed to trial that day." The unavailability of the defendant's counsel is not measured against the state. *Aligah v. State*, 394 N.W.2d 201, 205 (Minn. App. 1986), *review denied* (Minn. Nov. 17, 1986). Williams argues that the delay must bear against the

state in this case because it was caused by his counsel's actions over Williams's objections. *See State v. Johnson*, 498 N.W.2d 10, 16 (Minn. 1993) ("[D]elay occasioned by *the defendant himself* often is deemed a temporary waiver of his speedy trial demand." (emphasis added)). But the United States Supreme Court has held that because an attorney is the defendant's agent, delay caused by the defendant's attorney is also attributed to the defendant. *Brillon*, 556 U.S. at 90–91, 129 S. Ct. at 1290–91. This first part of the delay appears to be neutral, partly the result of the court's and the prosecutor's calendars, but also the result of Williams's attorney's calendar.

The next leg of the delay is partly neutral but otherwise falls against Williams. Williams's trial attorney and the prosecutor jointly requested a continuance for DNA testing. This is normally good cause for delay. *See State v. Stroud*, 459 N.W.2d 332, 335 (Minn. App. 1990). This period was therefore neutral, but not the next. Williams's attorney was in trial on an unrelated case on October 27, requiring Williams's trial to be postponed to December 8. This delay is attributable to Williams, as is any additional delay that may have resulted when Williams failed to appear at one of his pretrial hearings.

Williams presents nothing to show that any of the delay should weigh significantly against the state. Because most of the delay that can be attributed to either side resulted from Williams's defense efforts, this factor weighs against his speedy-trial claim.

**Assertion of Speedy-Trial Right**

A defendant's assertion of his speedy-trial right bears substantially on whether the right has been violated. *Barker*, 407 U.S. at 531–32, 92 S. Ct. at 2192–93. Williams asserted his right to a speedy trial. This factor weighs in his favor.

**Prejudice**

We assess whether prejudice exists in light of the interests that the speedy-trial right is designed to protect. *Id.* at 532, 92 S. Ct. at 2193. Those interests are (1) avoiding oppressive pretrial incarceration; (2) minimizing the defendant's anxiety and concern; and (3) averting the possibility that the defense will be impaired. *Windish*, 590 N.W.2d at 318. The most prejudicial of these is the possibility that the defense will be impaired. *Id.*

Williams argues that he suffered the kind of anxiety and concern that the speedy-trial right is designed to minimize because he sat in jail a total of 164 days from the time he was arrested until his trial began. We recognize that pretrial incarceration is no light burden. But it is an unfortunate consequence of being charged with a crime, and it is not by itself a basis on which we will find prejudice. *Stroud*, 459 N.W.2d at 335.

The Supreme Court gave examples of prejudice arising from possible defense impairment. For instance, prejudice is obvious if a witness dies or disappears during the delay. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. This is not a concern here. Prejudice also occurs if witnesses lose their memory during the delay. *Id.* This also is no concern here. Williams called no witnesses, and he does not contend that any potential witness became unavailable or forgetful. Indeed, the delay allowed for the DNA testing, which worked to Williams's advantage as his trial counsel seized on the lack of incriminating DNA evidence to argue his innocence to the jury. The delay did not prejudice Williams, and this factor weighs against him.

On balance, Williams's speedy-trial claim is unavailing. The first and third *Barker* factors weigh in Williams's favor because the lengthy delay was presumptively prejudicial

7

and because Williams asserted his right to a speedy trial. But the other two factors weigh substantially against him. Because most of the delay can be attributed to Williams and it caused his defense no harm, we see no speedy-trial violation.

## II

Williams argues that we must reverse his conviction of second-degree assault with a dangerous weapon because the state did not offer sufficient evidence to prove that Williams inflicted "substantial bodily harm." We review a challenge to the sufficiency of the evidence based on the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient for the jury to reach a verdict of guilty beyond a reasonable doubt. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989).

The state sought to prove that Williams assaulted C.E. with a dangerous weapon, causing substantial bodily harm. Minn. Stat. § 609.222, subd. 2 (2012). "Substantial bodily harm" is a "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member." Minn. Stat. § 609.02, subd. 7a (2012). Williams contends that the state "proved next to nothing about [C.E.'s] injuries" at trial. The state emphasizes that C.E. was barely cooperative, and it acknowledges that no medical testimony informed the jury about his injuries. The following evidence established C.E.'s injuries at trial, however, and we believe that this evidence sufficiently supports the jury's finding of substantial bodily harm: Williams shot C.E. in the buttock with a .38-caliber handgun; C.E. knew immediately that he was shot; C.E. bled from the wound, was taken by ambulance to the hospital for emergency

8

treatment, and he was hospitalized overnight; and C.E. continued at least five months later still carrying the bullet lodged in his body. For the following reasons, this evidence adequately proves "a fracture of any bodily member."

It is true that one readily thinks of "fracture" as referring to a broken bone. But the statute does not limit itself to this. We may look to common definitions to understand how the legislature intends for the public to construe its ordinary words. Minn. Stat. § 645.08 (2012) ("[W]ords and phrases are construed . . . according to their common and approved usage."); *State v. Peck*, 773 N.W.2d 768, 772 (Minn. 2009) ("When analyzing the plain and ordinary meaning of words or phrases, we have considered dictionary definitions."). A look into the dictionary confirms our common-sense understanding that "fracture" can also mean "the rupture (as by tearing) of soft tissue." *Merriam-Webster's Collegiate Dictionary* 496 (11th ed. 2014). And "member" includes "a leg, arm, or other part or organ of a human or animal body." *Webster's New Universal Unabridged Dictionary* 1122 (2d ed. 1983). On these accepted definitions, we are convinced that the evidence was sufficient here. That is, Williams's bullet's piercing through the skin and into the flesh of C.E.'s buttock deep enough to be lodged inside him indefinitely provided sufficient ground for the jury to find that Williams caused "a fracture" to "a bodily member" and, therefore, substantial bodily harm.

**Affirmed.**

9