*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0610**

State of Minnesota,
Respondent,

vs.

Scott Mathew Schillak,
Appellant.

**Filed November 24, 2025**
**Affirmed**
**Ross, Judge**

Hennepin County District Court
File No. 27-VB-24-149901

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Soren Mattick, Plymouth City Attorney, Calvin T. Lee, Assistant City Attorney, Campbell Knutson, P.A., Eagan, Minnesota (for respondent)

Scott Schillak, Eden Prairie, Minnesota (self-represented appellant)

Considered and decided by Bond, Presiding Judge; Ross, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

Scott Schillak demanded a speedy trial to contest a speeding citation that he received after a police officer ticketed him for driving 18 miles over the posted speed limit. Schillak appeals from his conviction, arguing first that the district court violated his speedy-trial right, second that he was improperly refused discovery contingent on his paying an

administrative fee, and third that the evidence was insufficient to support the speeding conviction because the district court admitted the officer's testimony about the LIDAR reading without sufficient foundation. Because the district court did not violate Schillak's right to a speedy trial, properly applied the discovery rules to require payment of the nominal administrative fee, and did not erroneously admit evidence of the LIDAR reading, we affirm.

## FACTS

In July 2024, Plymouth police officer Katie Saint stopped a car driven by Scott Schillak and cited him for speeding under Minnesota Statutes section 169.14, subdivision 2(a) (2024). Later that month, Schillak met with a hearing officer, requested a speedy trial, and sent the state a written request for discovery. The state responded by informing Schillak that he must pay a reproduction fee of $20 to obtain the discovery. The district court's discussion of the proceedings indicates that, after Schillak informed the state that he refused to pay the fee, the state advised him that he could avoid the fee requirement by successfully applying either for a fee waiver or for status as an *in forma pauperis* defendant. Schillak did neither and moved the district court to compel discovery.

A September off-the-record proceeding resulted in Schillak's trial being scheduled for October 15, 2024. Three weeks before the trial date, the state asked for a continuance because Officer Saint would be unavailable to testify. Schillak objected in writing to the continuance request and invoked his speedy-trial right. The district court granted the request and rescheduled the trial to December 24, 2024.

2

Six days before the rescheduled trial date, Schillak moved the district court to dismiss the charge, alleging violations of his due-process right to discovery and his right to a speedy trial. When the parties appeared on December 24 and the district court heard their oral arguments, Schillak asked for a written order deciding his motions. The district court granted Schillak's request and therefore postponed the trial date to March 18, 2025.

The district court issued its order on February 7, 2025, denying Schillak's motion to dismiss based on the alleged speedy-trial violation and the discovery violation to the extent it rested on the procedural rules. It reserved ruling on the alleged discovery violation arising from constitutional concerns and directed Schillak to complete an application for a public defender to determine whether he qualified for a reproduction-fee exemption. After Schillak's application revealed that he earns more than $200,000 annually, the district court determined that he is not exempt from the fee and denied his related motion to dismiss.

Officer Saint testified at trial that she was trained and certified in the use of LIDAR and that the LIDAR unit she used the day she stopped Schillak had been properly calibrated and passed her performance checks. She said that she was monitoring traffic on Interstate 494 at about 5:18 in the morning when she saw a northbound vehicle moving faster than others in the 60-mile-per-hour zone. Officer Saint said that her LIDAR device registered the vehicle's speed at 78 miles per hour. And she testified that when she stopped the vehicle, she identified Schillak as its driver.

Schillak cross-examined Officer Saint but offered no testimony of his own. He then unsuccessfully moved the district court to dismiss the charge, arguing that the state failed to offer documentary evidence of the LIDAR unit's calibration.

3

The district court found that Officer Saint credibly testified that the LIDAR unit was properly calibrated and properly working. It found Schillak guilty as charged and fined him $138 for the violation.

Schillak appeals.

## DECISION

Schillak contests his conviction, raising three primary arguments. He argues first that the district court violated his right to a speedy trial. He argues second that the district court violated his right to discovery. And he argues third that the evidence was insufficient to convict him because evidence of the LIDAR reading lacked foundation. Schillak adds a fourth contention, asserting that the cumulative effect of other trial errors deprived him of a fair trial. We address each argument in turn.

## I

We first address Schillak's contention that the district court violated his right to a speedy trial. We review *de novo* the district court's speedy-trial determination. *State v. Cham*, 680 N.W.2d 121, 124 (Minn. App. 2004), *rev. denied* (Minn. July 20, 2004). The state would have us skip this issue because, it maintains, the Sixth Amendment's speedy-trial right does not extend to petty-misdemeanor defendants. We need not decide the state's constitutional question, however, because Minnesota petty-misdemeanor defendants enjoy the right to a speedy trial under the Minnesota Rules of Criminal Procedure. Those rules afford misdemeanor defendants the right to a speedy trial within 60 days after demanding one in writing or on the record. Minn. R. Crim. P. 6.06. And "[e]xcept as otherwise provided in Rule 23, the procedure in petty misdemeanor cases must be the same as for

4

misdemeanors punishable by incarceration." Minn. R. Crim. P. 23.05, subd. 3. Although rule 23 excepts other rights in petty-misdemeanor cases, it does not except the right to a speedy trial. *Id.* Schillak asserts that his request for a speedy trial was recorded in writing on September 26, 2024, and the state does not contest the assertion. He therefore had a right to a speedy trial under the procedural rules. For the following reasons, we nevertheless conclude that the district court properly rejected his speedy-trial motion to dismiss.

Schillak's conviction survives his speedy-trial challenge. We apply a four-factor test to determine whether a defendant's right to a speedy trial was vindicated. *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999) (adopting test established in *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Those four so-called *Barker* factors are the length of the delay, the reason for the delay, whether the defendant asserted his speedy-trial right, and whether the delay prejudiced the defendant. *Id.* Schillak's argument fails on the second and fourth factors.

The length-of-the-delay (first) factor is the "triggering mechanism" that determines whether we must review further. *Id.* The mechanism is triggered here, because a 60-day delay after a speedy-trial demand is presumed prejudicial, *id.*, and the trial here occurred more than 170 days after Schillak's September 2024 demand. But the guiding determination in assessing the reason-for-the-delay (second) factor is whether the state or the defendant is more to blame for the delay, *State v. Osorio*, 891 N.W.2d 620, 628 (Minn. 2017), and here, the defendant bears the blame. The trial was delayed twice—once because the state asked for a continuance due to witness unavailability and once because Schillak filed two motions to dismiss days before trial and then insisted on a written decision. Although the first delay is attributable to the state, that delay does not support Schillak's

5

speedy-trial position because the unavailability of witnesses is generally considered good cause for delay. *Windish*, 590 N.W.2d at 317. The other substantial delay was solely Schillak's fault. The reason-for-the-delay factor therefore favors the state.

That Schillak asserted his right to a speedy trial (the third factor) favors his claim, but the lack of any prejudice (the fourth factor) defeats it. We assess prejudice by considering three interests that the right to a speedy trial protects: preventing oppressive pretrial incarceration; minimizing the accused's anxiety and concern; and preventing the possibility that the defense will be impaired. *Id.* at 318. Schillak was never incarcerated and fails to explain how the delay prejudiced his defense. This factor weighs heavily against his claim.

Because the only delay attributable to the state was for good cause and Schillak has shown no prejudice, we hold that the district court did not violate his right to a speedy trial.

**II**

Schillak offers two due-process theories, contending that the district court improperly failed to provide discovery and required a reproduction fee. We review *de novo* the alleged denial of due process. *State v. Lehman*, 749 N.W.2d 76, 82 (Minn. App. 2008). Our *de novo* review leads us to reject Schillak's argument.

Both of Schillak's theories depend on the premise that he was entitled to discovery without paying the required $20 document-reproduction fee. The premise is faulty. Although even in petty-misdemeanor cases a prosecutor must, on request, disclose exculpatory material to the defendant, Minn. R. Crim. P. 9.04, the state may assess "[a] reasonable charge . . . to cover the actual costs of reproduction" unless the defendant is

6

represented by a public defender or cannot afford counsel, Minn. R. Crim. P. 9.05. *See also Griffin v. Illinois*, 351 U.S. 12, 18–19 (1956) (establishing that due process requires excepting indigent defendants from transcript-preparation costs). Schillak neither contests the finding that he is not indigent nor offers any convincing argument that requiring him to pay $20 is unreasonable. Applying the $20 fee did not violate Schillak's discovery rights under the applicable rules.

Schillak also maintains that the fee is improper because the state sought a reproduction cost without verifying that the amount reflects the actual costs of reproducing the requested documents. But the appellant bears the burden of demonstrating error, *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001), and Schillak cites no record evidence to support his theory that $20 is excessive.

## III

Schillak contends that the evidence was insufficient to support his conviction. We review a sufficiency-of-the-evidence challenge by examining the record carefully to assess whether the facts and their reasonable inferences would allow the fact-finder to find the defendant guilty beyond a reasonable doubt. *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016). We do so deferentially, considering the evidence in the light most favorable to the verdict and assuming the fact-finder disbelieved any contrary evidence. *Id.* Drivers violate the law by operating at speeds greater than what is reasonable, Minn. Stat. § 169.14, subd. 1 (2024), and exceeding the posted speed limit is *prima facie* evidence of operating at an unreasonable speed, *id.*, subds. 2, 5 (2024) (specifying speed limits and authorizing commissioner of Minnesota Department of Transportation to alter highway speed limits).

7

Our review satisfies us that the state provided sufficient evidence to convict Schillak of speeding.

Officer Saint's testimony that Schillak was driving in a 60-mile-per-hour zone at speeds that exceeded 60 miles per hour is sufficient to support the conviction. The credible testimony of a single witness is enough to prove guilt. *State v. Bliss*, 457 N.W.2d 385, 390 (Minn. 1990). Officer Saint testified that she observed Schillak's vehicle moving faster than other highway vehicles and that she confirmed his excessive speed using her LIDAR unit, which she said registered his speed at 78 miles per hour. Although Schillak complains on appeal that the state did not corroborate the officer's testimony with documentary proof, he did not make this foundation objection to the officer's testimony at the time it was received during trial, meaning that we review the implicit evidentiary challenge only for plain error. *See State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008). We conclude for the following reasons that Schillak cannot prevail under our plain-error review.

Because Schillak seems to contend that the officer's LIDAR testimony was lacking in foundation, our review calls us to determine whether allowing the testimony constituted an error and whether the error was plain. *See State v. Milton*, 821 N.W.2d 789, 805–07 (Minn. 2012). If both are so, we determine whether the plain error affected Schillak's substantial rights. *Id.* We see no error, let alone a plain error. Sufficient foundation for LIDAR evidence exists if the state satisfies four statutory requirements: (1) the officer operating the device was sufficiently trained to use it; (2) the officer testifies about the manner the device was set up and operated; (3) the device was unaffected by distortion or interference; and (4) "the device was tested by an accurate and reliable external

mechanism, method, or system at the time it was set up." Minn. Stat. § 169.14, subd. 10(a) (2024). Officer Saint's testimony established each of these foundational elements. And contrary to Schillak's protests, neither the statute nor any caselaw he cites requires documentary corroboration of the officer's testimony about the device's working order or calibration history. Schillak's evidentiary argument and his related evidence-insufficiency argument both fail.

**IV**

Schillak suggests that other trial-related reasons require us to reverse—none convincing. He asserts that the district court should not have reserved deciding his motion to dismiss until after it considered whether he was exempt from paying the $20 reproduction fee, should have allowed him to question Officer Saint about her reason for not being available for the original trial date, and should have invited the parties to provide opening statements. We need not discuss the arguments on their merit, as none of the alleged errors affected the outcome. We do not reverse convictions for trial errors that are harmless. Minn. R. Crim. P. 31.01. The timing of the district court's decision on Schillak's reproduction-fee argument had no bearing on his conviction. Officer Saint's reason for being unavailable for trial likewise was irrelevant to any legal or factual issue in the trial. And Schillak does not explain how the district court's discretionary choice not to begin the speeding-citation trial with the parties' opening statements might have influenced the result. These facially uncompelling arguments caused Schillak no prejudice and therefore cannot justify reversing his conviction.

**Affirmed.**

9