# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A13-2401

State of Minnesota,
Respondent,

vs.

Abdirizak Mohamed Abdi,
Appellant.

**Filed October 27, 2014**
**Affirmed**
**Connolly, Judge**

Hennepin County District Court
File No. 27-CR-11-28068

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Mark V. Griffin, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Danail M. Mizinov, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Connolly, Judge; and Johnson, Judge.

## S Y L L A B U S

Because Minn. Stat. § 609.1055 (2012) gives the district court discretion to make a dispositional departure from the sentencing guidelines by placing an offender with a serious and persistent mental illness on probation with the condition that the offender successfully complete an appropriate supervised alternative-living program having a

mental-health treatment component, an appellate court reviews the decision to make or not make such a departure for an abuse of discretion.

## O P I N I O N

**CONNOLLY**, Judge

Appellant entered an *Alford* plea to a charge of assault in the first degree; the plea agreement provided that the state would seek a prison sentence and that appellant would argue for a dispositional departure on the ground of mental illness.[1] The district court rejected appellant's argument and imposed the presumptive prison sentence. Appellant challenges the sentence.

## FACTS

In September 2011, appellant Abdirizak Mohamed Abdi repeatedly stabbed his wife in the home they shared with their two small children. His wife ran to the neighbors, told them about the stabbing, and called 911; she also reported the matter to the police.

Appellant was charged with attempted murder in the second degree. The district court ordered that he be evaluated for competency to proceed to trial under Minn. R. Crim. P. 20.01. Appellant was initially found incompetent to stand trial, but, after undergoing treatment, was found competent.

He entered an *Alford* plea to an amended charge of assault in the first degree. The plea agreement provided that the state would seek a prison sentence of 86-103 months

---

[1] A defendant entering an *Alford* plea maintains innocence but concedes that there is sufficient evidence to support a guilty verdict. *State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977); *accord North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970).

2

and that appellant would seek a dispositional departure on the ground of mental illness. Following a hearing, at which appellant presented five witnesses, the district court denied his request for a dispositional departure and imposed an 86-month prison sentence.

## ISSUES

1.      Does the district court have discretion to make a dispositional departure from the sentencing guidelines by placing an offender with a serious and persistent mental illness on probation conditioned on the offender's successful completion of a supervised alternative-living program having a mental-health treatment component?

2.      Did the district court abuse its discretion in imposing a prison sentence on appellant?

## ANALYSIS

**1.      Standard of Review**

In construing statutes, "'[m]ay' is permissive." Minn. Stat. § 645.44, subd. 15 (2012). When an offender has "a serious and persistent mental illness . . . the court, when consistent with public safety, *may* instead [of imposing a prison term] place the offender on probation . . . and require as a condition of the probation that the offender successfully complete an appropriate supervised alternative living program having a mental-health treatment component." Minn. Stat. § 609.1055 (2012) (emphasis added). Thus, placing a mentally ill offender on probation conditioned on completion of a supervised alternative-living program is discretionary with the district court. We

3

therefore review a district court's decision to make a dispositional departure on the ground of mental illness under Minn. Stat. § 609.1055 for an abuse of discretion.[2]

## 2.     Appellant's Sentence

Basing its decision on two conclusions, the district court decided not to make a dispositional departure from the sentencing guidelines by putting appellant on probation with the condition that he complete an appropriate supervised alternative-living program. Appellant asked to be sent to a program at a residence for people of Somali descent that he designated as a place where he could "successfully complete an appropriate supervised alternative living program having a mental health treatment component" within the meaning of Minn. Stat. § 609.1055. The district court concluded that the program at the residence did not qualify as a "supervised alternative living program" and that sending appellant there would not be consistent with public safety. The state notes in its brief that the district court's written decision was "thorough, reasoned, analytical, rational, and based on the evidence in the record." We agree.

### A.     Suitability of the residence

The president and CEO of the residence program had not met appellant and knew nothing about him, but testified extensively about the program at the residence.

---

[2] As the district court noted, several unpublished decisions of this court have determined that this is the appropriate standard of review. *See, e.g.*, *State v. Shingobe*, No. A10-0900, (Minn. App. Feb. 1, 2011) (affirming denial of dispositional departure for mentally ill defendant based on reasons of public safety); *State v. Sturm*, No. A06-1299, (Minn. App. Sept. 4, 2007) (same*); State v. Molacek*, No. A05-0499, (Minn. App. Oct. 4, 2005) (affirming dispositional departure for mentally ill defendant because Minn. Stat. § 245.462, subd. 20(c) (2004), includes "bipolar disorder" as a mental illness).

Specifically, he testified that: (1) the program has never had a resident who was sent there on probation by the criminal justice system; (2) about 50% of the residents have bipolar disorder; (3) the residents are on medication; (4) residents who are not compliant with their medication regimen are discharged; (5) residents stay an average of one year and eight months; (6) whether a resident is ready to leave is determined by the staff and the residents' psychiatrists; and (7) nothing can be done to require residents who have chosen to leave the program to return to it.

Based on this testimony and on the testimony of appellant's psychiatrists that appellant would require close monitoring and close supervision to manage his mood disorder through medication and other means, the district court determined that, "[because] identifying and quickly responding to such symptoms [as appellant's] may be crucial to preventing the occurrence of another violent incident, . . . [the program at the residence] would not be able to provide the close supervision or emergency response time necessary for [appellant]." There was no abuse of discretion in this determination.

### B.    Consistent with Public Safety

Appellant testified at the *Alford* plea hearing that: (1) while he remembers nothing about the incident, he understood that his wife had run to the neighbors and told them that he had stabbed her with a knife; (2) she reported this to the police; (3) she would testify if appellant were tried on a charge of attempted murder; (4) she still suffered injury or substantial bodily harm from the knife wounds; (5) her testimony would give the jury reason to convict appellant of first-degree assault; and (6) there was enough evidence from the neighbors, from his wife, from the 911 calls, from the police report, and from

5

the medical examiners to convict him. Appellant answered "Yes" when the district court asked him if, while maintaining his innocence, he agreed there was enough evidence to convict him.

The program's president and CEO testified that the residence is not locked during the day; residents may come and go as they please; residents are encouraged to have day jobs; no security guards or police officers are on the staff; the 24-hour supervision provided by the program means that a staff person is always in the residence; some residents go AWOL; no doctors are on the staff; no staff members are trained in spotting bipolar symptoms; and, when staff members notice residents' behavior changes, they call a doctor or a supervisor to report the changes.

Based on this evidence, the district court concluded that:

> [Appellant] is a serious risk to public safety. He brutally attacked his wife with a knife, repeatedly stabbing her, chasing her through the home they shared with their two small children, and inevitably leaving her for dead on the dining room floor. This is an act of violence that cannot be minimized or explained away by the diagnosis of a mental illness. If [appellant] is capable of this type of violent crime there is no indication of what might happen if or when he is released into the community, which is theoretically what [he] asks this court to do. . . . [The program] has never had a resident placed there as a substitute to prison [and] has no means of notifying the neighborhood of the dangerous nature of a potential resident, leaving the public unreasonably unaware.

The determination that making a dispositional departure by sending appellant to the program at the residence rather than imposing a prison sentence would not be consistent

with public safety was not an abuse of discretion. Indeed, the statute specifically provides that this factor is to be considered.

Finally, appellant argues that the district court did not consider a downward durational departure once it had rejected his request to be sent to the program at the residence. Apart from the fact that such a departure was not contemplated by the express terms of the plea agreement, the district court did carefully consider such a request. In its decision the district court stated:

> Per the [s]entencing [g]uidelines, this court has the discretion to impose a durational departure in circumstances where the court finds that "the offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed." [Minn. Sent. Guidelines II.D.2.a.(3) (2010).] This mitigating factor *may* be used as grounds for a departure. Based on the severity of the offense, along with the ongoing effect on the victim, and the need for a consistent treatment plan, this court does not find it appropriate to apply the "mental illness" factor as one mitigating [appellant's] culpability, and in turn sufficient to warrant a durational departure in this sentence.

We see no abuse of discretion in the decision not to grant a downward durational departure.

## DECISION

The standard of review for a district court's decision to make a dispositional departure from the sentencing guidelines by placing an offender with a serious and persistent mental illness on probation with the condition that the offender successfully complete a supervised alternative-living program having a mental-health treatment component is abuse of discretion. We see no abuse of discretion in the district court's

7

decision not to place appellant on probation but to impose the presumptive prison sentence, and affirm it.

**Affirmed.**