*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1812**

State of Minnesota,
Respondent,

vs.

Donald Kalib John Nichols,
Appellant.

**Filed July 25, 2016
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-14-35729

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Worke, Judge; and Smith, Tracy M., Judge.

## UNPUBLISHED OPINION

Appellant Donald Kalib John Nichols challenges the district court's sentencing decision arising from his conviction of attempted intentional second-degree murder. The district court departed from the presumptive sentence under the Minnesota Sentencing

Guidelines and granted a downward durational departure but declined to grant a downward dispositional departure. Because the district court did not abuse its discretion in sentencing, we affirm.

## FACTS

Appellant entered a guilty plea and was convicted of attempted second-degree murder stemming from events that occurred in December 2014. Police officers responded to an emergency call that appellant was suicidal and had ingested prescription pills and alcohol. Appellant's father told the officers that appellant wanted to commit "suicide by cop," and had fled into the woods behind the house wearing body-armor and a helmet and carrying a machete. Medina Police Sergeant J.N., Hennepin County Sheriff Deputy B.B., and Plymouth Canine Officer C.L. and his canine partner began searching the woods for appellant.

Officers J.N. and C.L. found appellant in the woods, "clutching the handle of a machete knife" with both hands and holding it upwards at a 45-degree angle toward the two officers. The knife was a two-foot long "tactical type machete with a serrated blade." The officers ordered appellant to drop the knife and put up his hands, but appellant refused and continued holding the machete over his head "in a fighting stance." Officer J.N. drew his handgun and pointed it at appellant, and appellant yelled at the officer "to shoot him or kill him" and to "do it." Officer J.N. stated he did not want to shoot appellant. Appellant continued yelling at the officers and "advanced multiple times in short increments . . . while holding the machete at shoulder height."

As Officers J.N. and C.L. were speaking with appellant, Officer B.B. came through the woods behind appellant and approached him unnoticed. Officer B.B. was carrying a Taser and intended to incapacitate appellant to prevent a shooting situation. Officer B.B. deployed his Taser and struck appellant in the back of his legs. The Taser did not affect appellant. Appellant turned toward Officer B.B. and began running at him, holding the machete raised above his head with both hands on the handle. Officer B.B. stumbled backwards and dropped his Taser. Officer B.B. attempted to draw his handgun, but appellant began running at the officer and swinging the machete "as if preparing to cut wood with an ax." Appellant swung the machete at Officer B.B. Officer B.B. attempted to deflect the machete blade with his baton, but the blade struck, and cut the officer's upper arm. Officer B.B. believed appellant was trying to kill him and Officer J.N., who was observing the exchange, also believed appellant was trying to kill the officer. Officer B.B. pushed appellant away with his uninjured arm and drew his handgun. Appellant began to run at Officer B.B. with his machete a third time, and Officer J.N. fired two rounds and shot appellant in the upper mid-chest. The officers immediately sought medical help for appellant and placed him under arrest.

The state subsequently charged appellant with attempted second-degree intentional murder in violation of Minn. Stat. § 609.19, subd. 1(1) (2014), and first-degree assault against a peace officer in violation of Minn. Stat. § 609.221, subd. 2(a) (2014). The district court ordered a rule 20.02 psychological evaluation and assessment. A Hennepin County forensic psychologist rendered the following opinion regarding appellant's criminal responsibility for the December 4 incident:

It appears that [appellant] experienced ongoing significant psychiatric destabilization on December 4, 2014, most likely precipitated by self-induced substance intoxication from the preceding evening, as well as possible lingering intoxication. His mood, judgment, impulse control and cognition continued to be significantly impaired, most likely as the result of noted substance abuse. While [appellant] does suffer from a mental illness, the evidence would suggest that observed erratic and aggressive behaviors stemmed from substance-induced psychiatric symptoms.

. . .

Substance-induced psychiatric decompensation is generally viewed as inconsistent with a mental illness defense, when the substance(s) were voluntarily ingested, due to the widely known potential for mood altering chemicals to result in psychiatric instability. . . . While [appellant's] psychiatric decompensation appears to have significantly contributed to the alleged offenses on December 4, 2014, it does not appear that he would have experienced such a decompensation in the absence of his voluntary substance abuse.

As such, it is my opinion that [appellant] was NOT at the time of the offenses charged, as a result of mental illness or deficiency, laboring under such a defect of reason as not to know the nature of the acts or that they were wrong.

Appellant entered a *Norgaard* guilty plea to attempted second-degree intentional murder and the state dismissed the assault charge.[1] The parties did not agree on a sentencing recommendation. The district court informed appellant that at a contested sentencing hearing, "the State could argue for a guideline sentence, which . . . is a prison

---

[1] "A plea constitutes a *Norgaard* plea if the defendant asserts an absence of memory on the essential elements of the offense but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction." *Williams v. State*, 760 N.W.2d 8, 12 (Minn. App. 2009); *see State ex rel. Norgaard v. Tahash*, 261 Minn. 106, 110 N.W.2d 867 (1961).

4

commitment of 153 months, but [appellant's] attorney could also argue for whatever he felt was appropriate . . . which could be probation or something else." Appellant indicated that he understood this explanation.

The presentence investigation report recommended a dispositional departure with credit for jail time served and a five-year probationary period. Appellant moved for a downward durational departure and a downward dispositional departure. The district court granted appellant's request for a downward durational departure, determining that there were "substantial and compelling reasons to depart" durationally from the 153-month presumptive prison term and imposing a 99-month prison sentence. However, the district court denied appellant's request for a dispositional departure. This appeal follows.

## D E C I S I O N

We review a district court's refusal to grant a dispositional departure from the sentencing guidelines for an abuse of discretion, *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006), and we will affirm the imposition of a presumptive sentence "when the record shows that the sentencing court carefully evaluated all the testimony and information presented before making a determination," *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013), *review denied* (Minn. Sept. 17, 2013) (quotation omitted). The Minnesota Sentencing Guidelines prescribe a sentence or a range for the sentence that is "presumed to be appropriate." *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (quoting Minn. Sent. Guidelines 2.D.1 (2012)). The district court "must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling

circumstances" distinguishing the case and overcoming the presumption in favor of the presumptive disposition. *Id*.

Under the Minnesota Sentencing Guidelines, the sentencing court first calculates the defendant's presumptive sentencing range for the underlying offense. *State v. Kangbateh*, 868 N.W.2d 10, 17-18 (Minn. 2015). "When an offender is sentenced for an attempted offense under Minn. Stat. § 609.175 . . . the presumptive duration is one-half of that found in the appropriate cell on the applicable Grid for the underlying offense." Minn. Sent. Guidelines 2.G.2 (2014). For an offender with a criminal history score of zero, the presumptive sentence for intentional second-degree murder is commitment to the Commissioner of Corrections for 306 months, with a lower range of 261 months and an upper range of 367 months. Minn. Sent. Guidelines 4.A. Thus, the presumptive sentencing range for appellant's second-degree attempted murder offense is 130.5 months to 183.5 months, with a presumptive duration of 153 months.

The district court sentenced appellant to 99 months, below the presumptive range provided by the sentencing guidelines for an individual with appellant's criminal history score. However, the district court declined to grant appellant a downward dispositional departure. Appellant challenges the district court's denial of his motion for a downward dispositional departure on the grounds that: (1) he suffered from a long-standing and severe mental illness, and (2) he was amenable to treatment and to probation.

**A.**

When sentencing an offender with a "serious and persistent mental illness" to imprisonment, the district court, "when consistent with public safety, may instead place the

6

offender on probation . . . and require as a condition of the probation that the offender successfully complete an appropriate supervised alternative living program having a mental health treatment component." Minn. Stat. § 609.1055 (2014). Placing a mentally ill offender on probation is discretionary with the district court, and we "review a district court's decision to make a dispositional departure on the ground of mental illness under Minn. Stat. § 609.1055 for an abuse of discretion." *State v. Abdi*, 855 N.W.2d 546, 548-49 (Minn. App. 2014) (concluding district court did not abuse discretion in denying dispositional departure because public safety would not be served by departure).

The district court considered expert medical opinions from both parties, as well as the probation department's recommendation for possible community mental health treatment. The district court weighed these recommendations against the interests of public safety and determined that "[p]ublic safety cannot be ignored." *See* Minn. Stat. § 609.1055 (authorizing court to place offender into alternative living program "when consistent with public safety"). The district court stated that although appellant's mental illness could be treated through proper medication, "it is equally clear if he does not take his medication as directed the public is at danger." In a thoughtful and well-analyzed decision, the district court concluded that:

> Simply, and tragically in many ways, [appellant] has demonstrated an inability to be amenable to the same terms the Court would use for probation. His suicidal actions and the injury he caused to a deputy while attempting to commit suicide-by-cop show there was more intent here to carry out his plan – even if it meant injuring a responding officer to achieve his goal. His actions do not justify a dispositional departure.

As the district court noted, "[t]his is a difficult case," calling into question "the interplay between mental illness, voluntary intoxication, suicidal thoughts, and the involvement of police in a mental health crisis." The district court detailed appellant's history of mental illness and the regular care he received from a psychiatrist and a psychologist. But the factual record also revealed that appellant failed to take his medication as prescribed and continued to abuse marijuana and alcohol, which were known to trigger appellant's psychotic episodes. The rule 20.02 psychological evaluation also supports a determination that appellant's actions were primarily the product of alcohol intoxication and ingestion of prescription drugs, and that appellant "was not operating under a mental illness at the time of the offense that could provide a legal defense." Based upon the record as a whole, we determine that the district court's decision declining to grant a dispositional departure on the basis of mental illness was not an abuse of discretion.

**B.**

A defendant's "particular amenability to individualized treatment in a probationary setting" may justify a downward dispositional departure from a presumptive commitment to prison. *Soto*, 855 N.W.2d at 308 (quoting *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982) (emphasis omitted)). When justifying a dispositional departure, the district court focuses on the defendant as an individual and on whether the presumptive sentence would be best for him and for society. *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983). Minnesota courts are guided by several factors, known as *Trog* factors, to determine if a defendant is particularly amenable to individualized treatment in a probationary setting. *Trog*, 323 N.W.2d at 31. These factors include "the defendant's age, his prior record, his

8

remorse, his cooperation, his attitude while in court, and the support of [the defendant's] friends and/or family." *Id.* However, the presence of mitigating factors "[does] not obligate the court to place defendant on probation or impose a shorter term than the presumptive term." *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984).

The district court considered the factors underlying appellant's dispositional departure request. Appellant was 23 years old at the time of the offense. Although appellant did not have a "violent or felonious criminal history," he had several "touches" with the criminal justice system, including seven misdemeanor convictions and at least three juvenile adjudications. Moreover, appellant committed this offense while under a stayed civil commitment order that required him, among other things, to take his antipsychotic medication as prescribed. And although appellant expressed remorse during the sentencing hearing, the district court considered the statements "insufficient" because he did not take responsibility for treating his mental illness. Appellant submitted letters from family and friends at the sentencing hearing, and the district court expressed its hope that appellant's "close-knit family and small circle of friends remain a steady source of comfort for him." The record demonstrates that the district court considered the *Trog* factors and ultimately concluded that a dispositional departure was not appropriate. We discern no abuse of discretion in the district court's decision.

The Minnesota Supreme Court recognized that only the "rare case" merits reversal based on the district court's refusal to depart from the sentencing guidelines. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). This is not the "rare case" compelling reversal. The district court stated that: "[w]hile the Court recognizes the documented long-term

9

mental illness from which [appellant] suffered, that was not the lone reason for his conduct. Perhaps more directly, it was not demonstrated that he is particularly amenable to probation or he can be safely treated in the community." The district court considered appellant's arguments and the record as a whole and concluded that appellant was not entitled to a downward dispositional departure from the sentencing guidelines. The record supports the district court's decision that there were not "substantial and compelling reason[s]" supporting a dispositional departure in this case, *Soto*, 855 N.W.2d at 314, and we affirm.

**Affirmed.**