LARKIN, Judge
Appellant challenges his convictions of first-degree sale of a controlled substance and second-degree possession of a controlled substance, arguing that the district court violated his right to a speedy trial. He also challenges his sentence for the first-degree controlled-substance offense, arguing that the sentence is based on an incorrect criminal-history score. We affirm appellant's convictions, reverse his sentence for the first-degree controlled-substance offense, and remand for resentencing of that offense.
*568 FACTS
Respondent State of Minnesota charged appellant Donald Strobel with one count of first-degree sale of a controlled substance and one count of second-degree possession of a controlled substance, alleging that Strobel sold methamphetamine to a confidential informant on five occasions between August and November 2016, and possessed methamphetamine on December 20, 2016. On December 21, 2016, Strobel, who was in custody, appeared before the district court for a rule 5 hearing. The district court ordered unconditional bail in the amount of $200,000. On January 4, 2017, the district court ordered conditional bail in the amount of $100,000.
On January 26, 2017, Strobel, who was still in custody, appeared before the district court for an omnibus hearing and demanded a speedy trial. The district court noted that it would have to make room in its trial schedule to accommodate the demand and stated, "We'll find some way to get it heard before the [speedy-trial deadline of] 60 days expires." The district court scheduled the trial for March 20, 2017, within the 60-day timeframe.
On March 20, 2017, Strobel remained in custody, and the state was not prepared for trial. The state requested a continuance for two reasons. First, the state had discovered-that morning-that the Bureau of Criminal Apprehension (BCA) employee who had tested some of the controlled substances was on vacation. Second, the BCA had not yet tested the remainder of the substances. Strobel objected, but the district court granted the continuance for good cause, noting that the delay was caused by the BCA, and not by the prosecutor. The district court reduced Strobel's conditional bail to zero and released him from custody with instructions to return for trial on April 10, 2017, approximately 75 days after Strobel's demand for a speedy trial. The district court ordered conditions of release. The conditions included GPS monitoring and chemical testing, and they prevented Strobel from leaving the state, challenging extradition on the underlying charges if he left the state, and accessing or using alcohol.
Strobel's trial was held on April 11 and 12, 2017. Strobel was present for the first day of trial. On the second day of trial, Strobel went to the courthouse and spoke to his attorneys, but he did not attend his trial that day. The district court issued a warrant for Strobel's arrest, and the trial proceeded in his absence. The jury found Strobel guilty as charged, and the district court entered judgments of conviction. Strobel remained at large for nearly two months. He eventually appeared before the district court for sentencing, and the district court ordered him to serve concurrent prison terms of 115 and 108 months. Strobel appeals.
ISSUES
I. Was Strobel's constitutional right to a speedy trial violated?
II. Was Strobel's first-degree controlled-substance sentence based on an incorrect criminal-history score?
ANALYSIS
I.
Strobel contends that his constitutional right to a speedy trial was violated. The United States and Minnesota Constitutions guarantee a criminal defendant the right to a speedy trial. U.S. Const. amend. VI ; Minn. Const. art. I, § 6. In determining whether a defendant's right to a speedy trial has been violated, Minnesota courts apply the four-factor balancing test set forth in Barker v. Wingo , 407 U.S. at 530, 92 S.Ct. at 2192.
*569 State v. Widell , 258 N.W.2d 795, 796 (Minn. 1977). The four factors are "(1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant." State v. Windish , 590 N.W.2d 311, 315 (Minn. 1999) (citing Barker , 407 U.S. at 530-33, 92 S.Ct. at 2192-93 ). "None of the factors is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id . (quotation omitted).
A speedy-trial determination involves a "difficult and sensitive balancing process." Barker , 407 U.S. at 533, 92 S.Ct. at 2193. "Whether a defendant has been denied a speedy trial is a constitutional question subject to de novo review." State v. Osorio , 891 N.W.2d 620, 627 (Minn. 2017). We therefore consider each of the Barker factors de novo.
The Length of the Delay
"The length of the delay is a 'triggering mechanism' which determines whether further review is necessary." Windish , 590 N.W.2d at 315 (quoting Barker , 407 U.S. at 530, 92 S.Ct. at 2192 ). "Where the length of the delay is 'presumptively prejudicial' there is a necessity for inquiry into the remaining factors of the test." Id . (quoting Barker , 407 U.S. at 530, 92 S.Ct. at 2192 ). "In Minnesota, delays beyond 60 days from the date of demand raise a presumption that a violation has occurred." Id. at 315-16 ; see Minn. R. Crim. P. 11.09(b) ("On demand of any party ... trial must start within 60 days unless the court finds good cause for a later trial date.").
Here, the delay between Strobel's speedy-trial demand on January 26, 2017, and the beginning of his trial on April 11, 2017, was approximately 75 days. Although minimal, this delay is sufficient to trigger further inquiry into the remaining factors.
The Reason for the Delay
The second Barker factor is the reason for the delay, "including whether it is attributable to [the defendant] or the state." State v. Sistrunk , 429 N.W.2d 280, 282 (Minn. App. 1988), review denied (Minn. Nov. 23, 1988). "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." Barker , 407 U.S. at 531, 92 S.Ct. at 2192. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id .
"Normally, the unavailability of a witness constitutes good cause for delay. However, a prosecutor must be diligent in attempting to make witnesses available and the unavailability must not prejudice the defendant." Windish , 590 N.W.2d at 317 (citation omitted); see also State v. Chute , 887 N.W.2d 834, 845 (Minn. App. 2016) (unavailability of police officer held against state under second Barker factor), aff'd on other grounds , 908 N.W.2d 578 (Minn. 2018).
Here, the state was not prepared to try its case on the original trial date, because the prosecutor had just learned that a BCA employee was on vacation and unavailable to appear as the state's witness. Additionally, the BCA had not completed its testing of the alleged controlled substances. The state did not assert that it had subpoenaed the BCA witness. Nor did the state assert that it had communicated with the BCA witness before trial or otherwise attempted to ensure the availability of its BCA witness and evidence for trial.
*570 This lack of diligence weighs against the state. See Windish , 590 N.W.2d at 317 ("The state did not produce any evidence of its efforts to ensure [the witness's] appearance. This lack of diligence weighs against the state.").
Strobel urges this court to weigh this factor heavily in his favor, because "it is improper for the prosecution intentionally to delay to gain some tactical advantage over defendants or to harass them." Barker , 407 U.S. at 531 n.32, 92 S.Ct. at 2192 n.32 (quotation omitted). But the record does not suggest that the state deliberately delayed Strobel's trial. Because the record does not suggest that the state deliberately attempted "to delay the trial in order to hamper the defense," id. at 531, 92 S.Ct. at 2192, this factor weighs in favor of finding a speedy-trial violation, but not heavily.
Whether Strobel Asserted His Right to a Speedy Trial
"The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Id. at 531-32, 92 S.Ct. at 2192-93. The frequency and force of the demand may be weighed when assessing this factor. Id . at 528-29, 92 S.Ct. at 2191.
"In felony cases, a defendant may plead guilty as early as the Rule 8 hearing. The defendant cannot enter any other plea until the Omnibus hearing under Rule 11." Minn. R. Crim. P. 5.08. "If the defendant enters a plea other than guilty, a trial date must be set." Minn. R. Crim. P. 11.09(a). "A defendant must be tried as soon as possible after entry of a plea other than guilty. On demand of any party after entry of such plea, the trial must start within 60 days unless the court finds good cause for a later trial date." Minn. R. Crim. P. 11.09(b).
Strobel demanded a speedy trial at his January 26, 2017 omnibus hearing, which was his first opportunity to make such a demand under the rules of criminal procedure. The district court acknowledged Strobel's demand and adjusted its schedule to comply with Minn. R. Crim. P. 11.09(b). The state points out that, despite Strobel's speedy-trial demand, he "intentionally absented himself from trial," thereby delaying the proceedings. The state is only partially correct. Although Strobel absented himself from trial, his absence did not delay the trial. The trial continued, as scheduled, despite Strobel's absence. This factor weighs in favor of finding a speedy-trial violation.
Whether the Delay Prejudiced Strobel
We next consider the prejudice factor. "[U]nreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." Doggett v. United States , 505 U.S. 647, 654, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520 (1992) (quotation omitted). "Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id . (quotation omitted). Strobel claims all three forms of prejudice.
As to pretrial incarceration, the state notes that Strobel was released from jail on March 20, before the end of the 60-day period for starting a trial under rule 11.09(b). Strobel argues that his conditions of release resulted in substantial restrictions on his liberty, relying on State v. Griffin . 760 N.W.2d 336 (Minn. App. 2009). In that case, the district court placed the defendant on "standby status," requiring *571 her to be ready to start trial on two hours' notice, which effectively required her to be away from her home in Chicago and limited how far she could travel from the courthouse. Id. at 338-39. Her case remained on standby status "for at least 58 week days over [a] period of six months," and she was only permitted to travel to her home in Chicago for Christmas. Id. at 339. This court held that although the defendant "was not incarcerated while awaiting trial ... neither was she at liberty to pursue ordinary life activities," and her "freedom was severely restricted" by the court-ordered conditions of release. Id. at 341. This court held that the "severity" of these conditions prejudiced the defendant. Id.
Unlike the defendant in Griffin , Strobel was able to freely travel within Minnesota, which was where he and his family resided. The other conditions-submitting to GPS monitoring, waiving extradition, submitting to chemical testing, and refraining from having access to or using alcohol-did not severely restrict Strobel's freedom or his ability to pursue ordinary life activities. Strobel does not assert that he could not work or see his family or friends as a result of the conditions. And unlike the defendant in Griffin , Strobel was not required to be ready to start his trial on two hours' notice. Moreover, he was subject to the conditions for only three weeks, as opposed to six months. In sum, Strobel's circumstances are not comparable to those of the defendant in Griffin , and the record does not otherwise support a conclusion that the state's delay in bringing Strobel's case to trial resulted in oppressive pretrial incarceration.
As to harm stemming from pretrial anxiety and concern, the "stress, anxiety and inconvenience experienced by anyone who is involved in a trial" is insufficient to demonstrate prejudice. State v. Friberg , 435 N.W.2d 509, 515 (Minn. 1989). Strobel notes that he was unable to visit with his family and significant other while he was incarcerated and that this lack of contact caused him to experience "significant disruption of his relationships." Any defendant who is incarcerated pending trial is likely to experience disrupted relationships as a result of reduced contact with family and friends. Although we do not doubt that Strobel suffered some anxiety during the time it took the state to bring his case to trial, Strobel has not identified any heightened pretrial anxiety or concern that would suggest a constitutional violation.
The third type of prejudice, impairment of the defense, is the most serious and may be either specific or presumptive. Doggett , 505 U.S. at 654-56, 112 S.Ct. at 2692-93. Specific prejudice involves an "affirmative showing that the delay weakened [the defendant's] ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." Id. at 655, 112 S.Ct. at 2692. Presumptive prejudice does not require any particular showing of harm but results only from "excessive delay." Id. at 655, 112 S.Ct. at 2693.
Strobel does not assert that his ability to raise defenses, elicit testimony, or produce evidence for trial was in any way impaired as a result of the state's delay in bringing his case to trial. Nor does he argue that he suffered presumptive prejudice from excessive delay. Instead, Strobel argues that the delay in his trial "impaired his defense, and thereby prejudiced him" because if the state had been required to start the trial on the original trial date, "its case for proving [his] guilt would simply have been less strong." Essentially, Strobel argues that he was prejudiced-for the purpose of the fourth prong of a speedy-trial analysis-because the state had additional time *572 to prepare for trial as a result of pretrial delay.
Strobel's argument is similar to the defendant's speedy-trial argument in State v. Taylor , 869 N.W.2d 1 (Minn. 2015). In Taylor , the defendant argued that "he was prejudiced because [a pretrial] delay gave the State the opportunity to secure plea agreements with his codefendants," presumably strengthening the state's case against him. 869 N.W.2d at 20. The supreme court called Taylor's argument "novel" and rejected it, noting that "[t]ypically, [defense-impairing] prejudice is suggested by memory loss by witnesses or witness unavailability," and not a benefit to the state's case. Id. As support, the Taylor court quoted United States v. Abad , 514 F.3d 271, 275 (2d Cir. 2008) as follows:
"[The defendant] contends that the delay allowed the government to locate certain 'key prosecution witnesses' .... But this is not the sort of prejudice contemplated by Barker 's fourth factor. That prejudice is concerned with impediments to the ability of the defense to make its own case ...; the opportunity for the prosecution to prepare for trial does not, on its own, amount to prejudice to the defense."
Id . (alteration in Taylor ).
Strobel argues that Taylor is distinguishable, in part because the delay in Taylor was not caused by the state's desire to obtain a tactical advantage. See 869 N.W.2d at 20 ("Notably, there is no allegation that the delay was manufactured by the State."). Deliberate delay to obtain a tactical advantage is relevant in a speedy-trial analysis, but it is relevant to the second Barker factor, which is the reason for the delay, and not to the fourth factor. See Barker , 407 U.S. at 531, 92 S.Ct. at 2192 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government."). In our assessment of the second Barker factor, we concluded that the state's delay was not intentional. Even if it were intentional, the resulting benefit to the state would not establish the type of defense-impairing prejudice that is necessary to prevail on a speedy-trial claim, that is, "the inability of [the] defendant adequately to prepare his case." Id . at 532, 92 S.Ct. at 2193 ; Taylor , 869 N.W.2d at 20.
We therefore hold that the state's additional opportunity to prepare for trial as a result of pretrial delay does not constitute prejudice to the defendant sufficient to support a finding of a speedy-trial violation under the fourth Barker factor. In accordance with this holding, we do not consider any benefit that the state may have obtained as a result of the pretrial delay. Instead, we ask whether the delay compromised Strobel's ability to adequately prepare his case. Again, Strobel does not assert that his ability to prepare for trial was in any way harmed as a result of the state's delay in bringing his case to trial, or that he suffered presumptive prejudice from excessive delay. We therefore do not discern a basis to conclude that Strobel suffered from the third, and most serious, type of harm considered under the Barker prejudice factor: impairment of his defense.
In sum, Strobel did not suffer from oppressive pretrial incarceration, unusual anxiety or concern, or an impaired defense as a result of the pretrial delay in this case. The prejudice factor therefore weighs against finding a speedy-trial violation.
Balancing of the Factors
Strobel demanded a speedy trial under the rules of criminal procedure at his first opportunity. The start of Strobel's trial more than 60 days from the date of his demand raises a presumption that a *573 speedy-trial violation occurred. The state is responsible for the delay, which resulted from its apparent failure to make adequate efforts to ensure that its witness and evidence were available for a trial to begin as scheduled within 60 days of Strobel's demand. However, the district court simultaneously released Strobel from custody when granting the state's request for a continuance. We note that the rules do not mandate a defendant's release from custody for failure to comply with a speedy-trial demand under rule 11.09 until 120 days from the date of the demand. Minn. R. Crim. P. 11.09(b) ("Unless exigent circumstances exist, if trial does not start within 120 days from the date ... the demand is made, the defendant must be released under any nonmonetary conditions the court orders ...."). Strobel's trial began approximately 15 days after the 60-day period and well within the 120-day period set forth in rule 11.09(b). Most importantly, Strobel has not shown any prejudice resulting from the 15-day delay.
The supreme court has previously held that even though the first three Barker factors weighed in a defendant's favor, the defendant's right to a speedy trial had not been violated because he had not suffered any prejudice as a result of the delay. State v. Jones , 392 N.W.2d 224, 234-36 (Minn. 1986). We reach the same conclusion here. On balance, this record does not establish a violation of Strobel's constitutional right to a speedy trial.
II.
Strobel contends that the sentence for his first-degree controlled-substance offense is unlawful because it was based on an inaccurate criminal-history score.[1] "We review determinations of a defendant's criminal history score for abuse of discretion." State v.Edwards , 900 N.W.2d 722, 727 (Minn. App. 2017), aff'd mem. , 909 N.W.2d 594 (Minn. 2018).
The district court imposed a sentence of 115 months for Strobel's first-degree controlled-substance offense, based on the applicable Minnesota Sentencing Guidelines range of 98-138 months. See Minn. Sent. Guidelines 4.C (2016). The court based this sentence on its determination that Strobel had a criminal-history score of five, as indicated in a sentencing worksheet. The worksheet and accompanying presentence investigation report attributed one-half of one of Strobel's five criminal-history points to Strobel's June 2012 conviction for fifth-degree possession of a controlled substance. If Strobel had not received one-half of a criminal-history point for the 2012 fifth-degree offense, Strobel's criminal-history score would have been four,[2] and the presumptive sentencing range for his first-degree controlled-substance offense would *574 have been 90-126 months, and not 98-138 months.[3] See id.
"A defendant's criminal history score is calculated, in part, by allotting 'points' for each of a defendant's prior convictions for which a felony sentence was imposed." State v. Williams , 771 N.W.2d 514, 521 (Minn. 2009). The state has the burden to establish a defendant's criminal history. State v. Edmison , 379 N.W.2d 85, 87 & n.1 (Minn. 1985). The state also has the burden to establish the proper classification of a prior offense for inclusion in a criminal-history score. See Williams v. State , 910 N.W.2d 736, 740 (Minn. 2018) (stating, in context of out-of-state offense classification, "[t]he State bears the burden of proof at sentencing to show that a prior conviction qualifies for inclusion within the criminal-history score").
Minnesota Sentencing Guidelines 2.B.7.a. (2016) provides: "The classification of a prior offense as a petty misdemeanor, misdemeanor, gross misdemeanor, or felony is determined by current Minnesota offense definitions (see Minnesota Statutes section 609.02, subdivisions 2 to 4a ) and sentencing policies." The supreme court recently held that the phrase "current Minnesota offense definitions ... and sentencing policies" means "Minnesota offense definitions and sentencing policies in effect when the current Minnesota offense was committed." Scovel , 916 N.W.2d at 552-53 (quoting Minn. Sent. Guidelines 2.B.7.a. (Supp. 2015) ). Thus, a defendant's prior offense may be classified as a felony only if the prior offense would constitute a felony under Minnesota law at the time the current offense was committed.
Strobel complains that the state did not prove that his 2012 fifth-degree controlled-substance-possession offense should be classified as a felony when calculating his criminal-history score. He relies on the DSRA, which made substantial changes to Minnesota's drug laws. See 2016 Minn. Laws ch. 160, §§ 1-22, at 576-92. Among other amendments, the DSRA created a new category of fifth-degree controlled-substance-possession crime that is punishable as a gross misdemeanor.[4] 2016 Minn. Laws ch. 160, § 7, at 583-85. Under the DSRA amendments to the fifth-degree controlled-substance statute, a person who does not have a prior controlled-substance conviction is guilty of a gross misdemeanor, and not a felony, if he possesses "less than 0.25 grams or one dosage unit or less" of a drug other than heroin, or "less than 0.05 grams" of heroin. Minn. Stat. § 152.025, subd. 4(a). The DSRA-amended version of the fifth-degree controlled-substance statute became effective on August 1, 2016, 2016 Minn. Laws ch. 160, § 7, at 583-85, and was in effect when Strobel committed his current first-degree controlled-substance offense between August and November 2016.
Strobel notes that the state did not submit any evidence regarding the type and *575 amount of drug underlying his 2012 offense. Strobel argues that because the current DSRA-amended fifth-degree controlled-substance statute created a new gross-misdemeanor-level offense based on the type and amount of drug possessed and the state did not present evidence to establish that Strobel's 2012 offense would constitute a felony, and not a gross misdemeanor, under the DSRA-amended statute, the state did not meet its burden to show that Strobel's 2012 offense should be classified as a felony when calculating his criminal-history score.
"[I]t is up to the Minnesota Sentencing Guidelines Commission to determine how an offender's prior record will be used in assessing the number of criminal history points ...." State v. Zeimet , 696 N.W.2d 791, 796 (Minn. 2005). Interpreting the Minnesota Sentencing Guidelines presents a question of law, which we review de novo. Scovel , 916 N.W.2d at 554. When a court interprets the guidelines, it uses the same principles as when interpreting statutes. Id. "If the Guidelines language is plain and unambiguous, it is presumed to manifest the intent of the Minnesota Sentencing Guidelines Commission," id . at 554-55, and we apply it as written.
Because Minnesota Sentencing Guidelines 2.B.7.a. states that the classification of a prior offense is determined by "current Minnesota offense definitions" and specifically cites Minnesota Statutes section 609.02 (2016), we follow that clear language and look to section 609.02 to determine the classification of Strobel's 2012 offense. Section 609.02 describes criminal offense levels according to the sentences that may be imposed. A "[f]elony" is "a crime for which a sentence of imprisonment for more than one year may be imposed ." Minn. Stat. § 609.02, subd. 2 (emphasis added). A "[m]isdemeanor" is "a crime for which a sentence of not more than 90 days ... may be imposed ." Id. , subd. 3 (emphasis added). And a "[g]ross misdemeanor" is "any crime which is not a felony or misdemeanor." Id. , subd. 4. In other words, a gross misdemeanor is a crime for which a sentence of more than 90 days, but not more than one year, may be imposed. See Minn. Stat. § 609.03(2) (2016) (limiting sentences for gross misdemeanors where punishment is not otherwise fixed to no more than one year).
As to the legislature's use of the phrase "may be imposed" in section 609.02, we note that "may" is permissive. Minn. Stat. § 645.44, subd. 15 (2016) ; State v. Abdi , 855 N.W.2d 546, 548 (Minn. App. 2014), review denied (Minn. Jan. 20, 2015). Thus, we read the phrase "may be imposed" in section 609.02 to plainly mean a sentence that is permitted or authorized by law.
We now apply the plain language of Minnesota Sentencing Guidelines 2.B.7.a. and section 609.02 to determine whether Strobel's 2012 fifth-degree controlled-substance offense was properly classified as a felony. In doing so, we consider the sentence that "may be imposed" under the fifth-degree controlled-substance statute that was in effect when Strobel committed the current, first-degree controlled-substance offense: the 2016 DSRA-amended version of section 152.025. The penalty subdivision of section 152.025 defines certain fifth-degree controlled-substance-possession offenses as gross misdemeanors, depending on the type and amount of controlled substance possessed. Minn. Stat. § 152.025, subd. 4(a). Next, the penalty subdivision authorizes imprisonment "for not more than five years," unless the underlying conduct qualifies as a gross misdemeanor under subdivision 4(a). Id. , subd. 4(b). The penalty provision does not specify a punishment for a gross-misdemeanor offense under subdivision 4(a). In such circumstances, *576 "[I]f the crime is a gross misdemeanor" the penalty may include "imprisonment for not more than one year." Minn. Stat. § 609.03(2).
If the type and amount of controlled substance underlying Strobel's 2012 fifth-degree offense would constitute a gross misdemeanor under the DSRA-amended version of section 152.025, a sentence of more than one year may not be imposed. In that event, the offense would not be a felony under the definition in section 609.02, which is the basis for offense classification under Minnesota Sentencing Guidelines 2.B.7.a. We therefore hold that a prior fifth-degree controlled-substance-possession offense may not be classified as a felony when calculating a criminal-history score to be used in sentencing a crime that occurred after the effective date of the DSRA amendments to section 152.025, if the prior offense would qualify as a gross misdemeanor under subdivision 4(a) of the DSRA-amended version of section 152.025.
The state suggests a different approach, which would base a prior offense classification on the sentence that was given, instead of the sentence that may be imposed under current law. The state argues that because Strobel "received a stayed five-year prison sentence for his 2012 fifth-degree controlled substance crime, which 'current Minnesota offense definition' section 609.02 states is a felony," his 2012 conviction for fifth-degree controlled-substance crime was properly classified as a felony when calculating his criminal history. As support, the state relies on comment 2.B.701 to the sentencing guidelines, which states, "The Commission recognized that the classification of criminal conduct as a felony, gross misdemeanor, or petty misdemeanor is determined legally by the sentence given rather than the conviction offense." Minn. Sent. Guidelines cmt. 2.B.701 (2016) (emphasis added).
The state's reliance on comment 2.B.701 is unavailing because comments to the sentencing guidelines are "merely advisory, not binding." Scovel , 916 N.W.2d at 555. Moreover, comment 2.B.701 must be read in context. For example, Minnesota Statutes section 609.13, subdivision 1(1) (2016) provides: "Notwithstanding a conviction is for a felony ... the conviction is deemed to be for a misdemeanor or a gross misdemeanor if the sentence imposed is within the limits provided by law for a misdemeanor or gross misdemeanor as defined in section 609.02." Minnesota Sentencing Guidelines 2.B.1.h. (2016), is in accord, providing: "Except when a monetary threshold determines the offense classification of the prior offense ..., when a prior felony conviction resulted in a non-felony sentence (misdemeanor or gross misdemeanor), the conviction must be counted in the criminal history score as a misdemeanor or gross misdemeanor conviction ...."
When comment 2.B.701 is read in that context, it is apparent that the comment's recognition "that the classification of criminal conduct ... is determined legally by the sentence given rather than the conviction offense" is simply an acknowledgement of the principles set forth in section 609.13 and Minnesota Sentencing Guidelines 2.B.1.h. Under those principles, if a defendant received a misdemeanor-level sentence on a prior offense, the prior offense is categorized as a misdemeanor when calculating a criminal-history score, even though a felony-level sentence is authorized under current law, except when a monetary threshold determines the offense classification of the prior offense. In sum, the classification of a prior offense is determined under Minnesota Sentencing Guidelines 2.B.7.a., as modified by Minnesota *577 Sentencing Guidelines 2.B.1.h. Comment 2.B.701 does not control the offense classification.
Because the state did not establish that Strobel's 2012 fifth-degree controlled-substance conviction was properly classified as a felony, we reverse the sentence on his first-degree controlled-substance offense and remand with instructions permitting the state to develop the record regarding the type and amount of controlled substance underlying Strobel's 2012 conviction. See State v. Outlaw , 748 N.W.2d 349, 356 (Minn. App. 2008), review denied (Minn. July 15, 2008) (stating that because a defendant "did not object to the district court's determination that his out-of-state convictions were felonies," the state "is permitted [on remand] to further develop the sentencing record so that the district court can appropriately make its determination"). On remand, the state has the burden to establish that Strobel's 2012 fifth-degree controlled-substance offense would constitute a felony, and not a gross misdemeanor, under the DSRA-amended version of Minn. Stat. § 152.025 that was in effect when Strobel committed the first-degree controlled-substance offense. If the state cannot meet that burden, the offense shall not be classified as a felony when computing Strobel's criminal-history score.
DECISION
Although three of the four Barker factors weigh in favor of finding a speedy-trial violation, those factors are substantially outweighed by the complete lack of prejudice resulting from the brief pretrial delay in this case. We therefore reject Strobel's speedy-trial claim and affirm his convictions. But because the state failed to prove that Strobel's 2012 fifth-degree controlled-substance-possession offense should be classified as a felony for purposes of his criminal-history-score calculation, we reverse the sentence on Strobel's first-degree controlled-substance offense and remand for resentencing.
Affirmed in part, reversed in part, and remanded.

The state argues that Strobel should have raised his sentencing challenge as a motion for sentence correction in the district court. The rules of criminal procedure provide that defendants may move the district court at any time to "correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 9. However, a sentence based on an incorrect criminal-history score is an illegal sentence that may be corrected on direct appeal, regardless of whether the defendant objected to the score at sentencing. State v. Scovel , 916 N.W.2d 550, 553 & n.5 (Minn. 2018). Although Strobel could have pursued sentencing relief under rule 27.03, his challenge is properly before this court, and we therefore consider it.

The sum of Strobel's criminal-history points would have been four-and-a-half, but the guidelines provide that "[i]f the sum of the weights results in a partial point, the point value must be rounded down to the nearest whole number." Minn. Sent. Guidelines 2.B.1.i. (2016).

Because the district court used the Hernandez method to calculate Strobel's criminal-history score when sentencing his second-degree controlled-substance offense, the allegedly incorrect criminal-history score used to sentence Strobel's first-degree offense did not impact Strobel's sentence for the second-degree offense. See Minn. Sent. Guidelines 2.B.1.e. (2016) ("As each offense is sentenced, include it in the criminal history on the next offense to be sentenced (also known as "Hernandizing ") ...."). As to the second-degree offense, the point accumulation under the Hernandez method offset any erroneous point inclusion stemming from an inaccurate classification of Strobel's 2012 offense. Strobel therefore does not challenge his sentence for the second-degree controlled-substance offense.

Prior to the DSRA, all fifth-degree controlled-substance offenses were punishable as felonies. See Minn. Stat. § 152.025 (2014).